Original
No. 7953

KEENE PUBLISHING CORP.

v.

KEENE DISTRICT COURT

November 23, 1977

960

*Bell and Falk,* of Keene (*Mr. Arnold R. Falk* orally), for the plaintiff.

*Edward O'Brien,* of Keene, orally for the State of New Hampshire.

*Eric J. Kromphold, Jr.* and *Stillman Rogers,* of Keene, for Robert W. Decker.

*Orr and Reno,* of Concord (*Mr. William L. Chapman* orally), for amicus curiae Monitor Publishing Co.

DOUGLAS, J.    This is a petition to review a district court ruling, RSA 490:4, ordering the closing of a probable cause hearing. Following the arrest of one Robert Decker a few days ago on seven sex-related charges involving male minors, a probable cause hearing was scheduled for the morning of November 22, 1977, in the Keene District Court. Counsel for Decker orally moved to have the hearing closed to all outsiders. Counsel was motivated by a concern to protect the accused from any publicity that might affect potential jurors when or if Decker was indicted and later went to trial in Cheshire County. The Keene Sentinel, published by plaintiff, had run several articles about the arrest and charges against Decker. The District Court (*Prigge,* J.) granted the motion to exclude the press and public after the assistant county attorney indicated that the state did not oppose the motion. Representatives of the plaintiff's newspaper contacted the district court judge seeking to rescind his order. When no change was forthcoming this petition came before us a few hours later pursuant to this court's supervisory power over lower courts. RSA 490:4. The probable cause hearing was continued until November 28 and thus the matter is not moot and raises urgent and important issues that we feel should be resolved.

In this state the press has been held to have a right, though not unlimited, to gather news so as to effectuate the policy of our constitution that a free press is "essential to the security of freedom in a state." N.H. Const., pt. 1, art. 22; *Opinion of the Justices*, 117 N.H. 386, 373 A.2d 644 (1977). Of course, a defendant has a constitutional right to a public trial which he may waive. *Martineau v. Helgemoe*, 117 N.H. 841, 379 A.2d 1040 (1977). *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976), set stringent standards to determine the validity of prior restraints on the press through "gag" orders, but left unanswered the question of what standard to apply in determining whether a preliminary hearing should be closed. *Id.* at 564 n.8.

The press here argues that excluding the press from the courtroom entirely sweeps more broadly, and is thus a greater restraint, that if it can be present, albeit in some particulars "gagged" from printing some of what it hears. Of concern on the other side is that if "gag" orders are infirm, then there is no limit to what the press may publish if present in a public courtroom and thus there would be no effective way for a defendant to prevent prejudicial pretrial publicity. *See, e.g., Oklahoma Publishing Co. v. District Ct.,* 430 U.S. 308 (1977), *Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469 (1975); Note, *Exclusion of Public From a Proceeding Merely Upon Request is in Excess of Court's Power,* 30 U. Miami L. Rev. 1075 (1976). RSA 596-A providing for probable cause hearings permits exclusion and separation of witnesses. RSA 596-A: 6.

The American Bar Association Standards Relating to Fair Trial and Free Press (1968) in Standard 3.1 provide for exclusion of the press and public from pretrial hearings upon motion, *provided* "a complete record of the proceedings shall be kept and shall be made available to the public following . . . trial." The commentary by the drafting committee concluded that the standard struck the appropriate balance. ABA, *supra* at 117. Since that time the successor to the "Reardon Committee" has recommended that the Standard be rewritten to provide that:

> A judge may not close to the public (including representatives of the news media) any preliminary hearing, bail hearing, or other pretrial hearing in a criminal case, including a motion to suppress, or seal any document unless the failure to close the proceeding or the seal (sic)

the document constitutes a clear and present danger to a fair trial in that:

(1) There is a substantial likelihood that information prejudicial to the accused's right to a fair trial would reach potential jurors; and

(2) The prejudicial effect of such information on potential jurors cannot be avoided by alternative means. In assessing whether alternative means are available, the court must consider whether the rights of the accused guaranteed by the fifth and sixth amendments can adequately be preserved through: (a) continuance; (b) severance; (c) change of venue; (d) change of venire; (e) voire dire; (f) additional peremptory challenges; (g) sequestration of the jury; (h) admonition to the jury; and (i) other less restrictive procedures." Legal Advisory Committee on Fair Trial and Free Press, Draft at 6–7 (August 1, 1977).

In its commentary the committee cited *Nebraska Press Association* and explained its change in Standard 3.1 as follows:

The presumption is strongly in favor of open judicial proceedings and unsealed records. The burden will be on the party moving for closure to demonstrate under the clear and present danger test the necessity of such an order and the lack of effectiveness of alternative procedures. The public interest in open trials is substantial and the Committee accordingly found that the defendant's willingness to waive his public trial right should by no means be the decisive factor in assessing the propriety of a closure motion. Draft, *supra* at 2.

The proposed standard accords with this court's policy and offends neither our State nor the Federal Constitution.

We also note that plaintiff has said, and will therefore be bound by, an agreement not to publish the names of any juveniles that may be disclosed during further probable cause hearings.

Much that has been written about empirical studies of pretrial publicity indicates that "for the most part juries are able and willing to put aside extraneous information and base their decisions on the evidence." Simon, *Does the Court's Decision in Nebraska Press Association Fit the Research Evidence on the Impact on Jurors of*

*News Coverage?*, 29 Stanford L. Rev. 515, 528 (1977); *see* Schmidt, *Nebraska Press Association: An Expansion of Freedom and Contraction of Theory*, 29 Stanford L. Rev. 431, 450 (1977). Appropriate tools are available to the trial court as outlined in the draft ABA standard to exclude jury prejudice. This opinion does not hold that the press can never be excluded from a probable cause hearing but that the order in this case is not grounded on sufficient fact to withstand attack under the test set forth in the proposed ABA standard and this court's policy in favor of open courtrooms. *See Thomson v. Cash*, 117 N.H. 653, 377 A.2d 135 (1977).

This is not to say that the press should not exercise responsible self-restraint, keeping in mind the relaxed evidentiary rules in probable cause hearings that may allow in evidence (such as hearsay or a confession) that would not be presented to a jury during a trial. A responsible press may well wish to be present, yet restrain its own reporters as to what is printed as a result of probable cause hearings.

*Order vacated.*

All concurred. BROCK, J., sat by special assignment pursuant to RSA 490:3.