Original
No. 79-232

KEENE PUBLISHING CORP.

v.

CHESHIRE COUNTY SUPERIOR COURT

September 13, 1979

*Bell & Falk* (*Ernest L. Bell III* and *Arnold R. Falk* orally), for plaintiff, Keene Publishing Corp.

*William H. Kennedy* and *Bragdon, Berkson & Mangones* (*Philip P. Mangones* orally), for defendant Radziewicz.

*Thomas D. Rath*, attorney general, and *John C. Boeckeler*, assistant attorney general (*Peter W. Mosseau*, attorney, orally), for the State.

*Eric R. Gardner*, by brief, for defendant Scadova.

PER CURIAM. This is a petition requesting this court to review a superior court ruling, RSA 490:4 (Supp. 1977), that counsel for a newspaper publisher attend pretrial hearings on motions to suppress specific evidence from introduction into certain pending criminal proceedings so as to advise his client what information obtained during the hearings could be published.

At a pretrial suppression hearing involving robbery and murder cases on August 24, 1979, the State requested that the public and news media be excluded from the hearing because the hearing involved motions to suppress that might add to alleged adverse pretrial publicity that would jeopardize the criminal defendants' ability to receive fair trials. The Superior Court (*King*, J.) granted the motion for closure after counsel for the defendants joined in the motion. No evidentiary hearing was conducted. A reporter, employed by the Keene Publishing Corp., made no objection at the time of the closure motion though he was present in the courtroom. He was thereafter barred from the courtroom during the suppression hearing.

The plaintiff, Keene Publishing Corp., moved to intervene and have the courtroom closure order set aside. The court granted the plaintiff's motion, but required that its counsel attend the pretrial hearings "in order to advise his client . . . so that the publication of the proceedings in these hearings shall not require change of venue . . . or alternative actions by the Court." Plaintiff timely challenges this order.

■■ In this State the press has been held to have a State constitutional right, though not unlimited, to gather news. N.H. CONST. pt. I, art. 22; *Keene Pub. Corp. v. Keene Dist. Ct.*, 117 N.H. 959, 961, 380 A.2d 261, 262 (1977); *Opinion of the Justices*, 117 N.H. 386, 373 A.2d 642 (1977). To effectuate this right, this court has adopted standards that govern pretrial criminal hearings and establish a presumption in favor of open judicial proceedings and unsealed court records. Preliminary hearings may be closed to the public or press only if dissemination of information from the proceedings would create a "clear and present danger" to the fairness of the trial and if the prejudicial effect of such information could not be avoided by any reasonable alternative to closure. *Keene Pub. Corp. v. Keene Dist. Ct. supra.*

Although the trial judge may have relied upon one of a number of possible interpretations of *Gannett Co., Inc. v. DePasquale*, 99 S.Ct. 2898 (1979), we adhere to the standards set forth in *Keene Pub. Corp. v. Keene Dist. Ct.*, 117 N.H. 959, 380 A.2d 261 (1977), which are unaffected by *Gannett*, and which it appears the trial court did not follow.

The case in its present posture does not, however, present a closure question because the trial judge, upon motion, has now opened the hearing. The real question now is whether the trial court's order constitutes a prior restraint on the press. We are of the opinion that it does and that *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976), governs.

The trial court, after properly reopening the hearings, required that plaintiff's counsel advise his client so. that any "publication" would not require the court to change venue or consider "alternative actions." Counsel for the newspaper thus became a court appointed "censor" or monitor to control what the paper was to publish. In *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976), the Supreme Court balanced the first and sixth amendment rights and concluded that "prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Id.* at 559. *See also Landmark Communications, Inc. v. Virginia*, 435 U.S. 829 (1978) and *Smith v. Daily Mail Publishing Co.*, 99 S.Ct. 2667 (1979). Thus the "barriers to prior restraint remain high and the presumption against its use continues intact." *Nebraska*, 427 U.S. at 570. *See also* ABA STANDARDS RELATING TO THE ADMINISTRATION OF CRIMINAL JUSTICE, FAIR TRIAL AND FREE PRESS, 8-3.1 (Approved Draft, 1978).

■ Although the order is not a direct "gag" order as in *Nebraska supra*, it nonetheless constitutes an implied "gag" order. We find nothing in the record which would support such an order. We therefore hold that the court's order after the reopening of the hearing was invalid. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976).

One effective method of avoiding any prejudicial effect of media coverage, while at the same time resolving the conflict between the fair trial-free press rights, is to seek the voluntary cooperation of the news media in delaying dissemination of potentially prejudicial information. *See* ABA STANDARDS, *supra* at 8-3.2.

As set forth in the *Layman's Guide to New Hampshire Court Procedures* at 20 (January 1979):

> [I]t has come to be recognized that the issues of fair trial and free press do not in fact impose an irreconcilable division between the courts and the media. This is one of the promising consequences flowing from the dialogue of recent years. The challenge is to find approaches through which both can be accommodated fairly.

In practical terms of day-to-day criminal law procedures and news reporting, this means developing acceptable patterns of practice to accomplish that result. It is a tripartite obligation of the bar and courts, law enforcement agencies and the news media.

The New Hampshire Fair Trial-Free Press Committee has formulated a procedure that conforms to our policy favoring open judicial proceedings. It provides that when a closure order is contemplated and the news media are present or indicate an interest in the matter, the court should consider holding an informal conference in which interested parties, including the news media, may be heard. If, after such a hearing or conference, no voluntary agreement is reached, and an order closing a hearing is issued, the court must state for the record its supporting findings of fact. *See Layman's Guide, supra* at 30. This procedure and the procedures set forth in *Keene Pub. Corp.*, not ony protect the defendant's sixth amendment right to an impartial trial, N.H. CONST. pt. I, art. 15, but preserve the news media's State constitutional right to gather news under N.H. CONST. pt. I, art. 22.

*Amended order of August 24, 1979, vacated; remanded.*