Merrimack
No. 91-055

## Petition of Keene Sentinel

August 27, 1992

 

 

 

 

*Bell, Falk & Norton P.A.*, of Keene (*Arnold R. Falk* and *William J. Robinson* on the brief, and *Mr. Falk* orally), for the Keene Sentinel.

*Douglas & Douglas*, of Concord (*Caroline Douglas* on the appellees' joint brief and orally), for Charles G. Douglas, III.

*Abramson, Reis & Brown*, of Manchester (*Stanley M. Brown* on the appellees' joint brief and orally), for Martha R. (Douglas) Johnson, Charles G. Douglas, IV, and Thomas A. Douglas.

JOHNSON, J. The Keene Sentinel appeals the decision of the Superior Court (*Dunn*, J.) denying its requests to unseal the records of Charles G. Douglas, III and Martha R. (Douglas) Johnson's 1979 divorce and Charles G. Douglas, III and Nancy C. (Douglas) Clough's 1983 divorce. The newspaper argues that both the State and Federal Constitutions guarantee it a right of access to records such as these, while Charles G. Douglas, III, Martha R. Johnson, Charles G. Douglas, IV, and Thomas A. Douglas (the Douglases) contend that access would violate their right of privacy. Moreover, they submit that the Keene Sentinel's request is untimely. For the reasons stated below, we reverse and remand.

This lawsuit began in the summer of 1990, during a political campaign for New Hampshire's second congressional district seat in the United States House of Representatives. The major contenders in the race were the incumbent, Charles G. Douglas, III, a former member of the superior and supreme courts, and Richard Swett, who ultimately won. In July 1990, a Keene Sentinel reporter visited the Merrimack County Superior Court and asked to examine the records

of Charles G. Douglas, III's divorces. A clerk told the reporter that the file of the 1979 divorce, between Martha R. Johnson and Charles G. Douglas, III, had been "partially impounded," and that only the following documents were open for public inspection: the libel for divorce, the orders of notice setting forth a return date, a return of service, an appearance, a joint motion of the parties to waive the thirty day rule for final hearings and to place the parties' permanent stipulation in a sealed envelope, an order approving the motion, an order granting a divorce, a State report of divorce, an order accepting the permanent stipulation, and a notice of a post-divorce order. The reporter was informed that the file of the 1983 divorce, between Charles G. Douglas, III and Nancy C. Clough, was "completely impounded."

The petitioner sought to intervene in each case. Martha R. Johnson and Charles G. Douglas, III both asked the superior court to dismiss the Keene Sentinel's petitions, while Charles G. Douglas, IV and Thomas A. Douglas, sons of Martha R. Johnson and Charles G. Douglas, III, filed their own motions to intervene. Nancy C. Clough did not file an appearance, and an order of default was entered against her.

The superior court granted the Keene Sentinel's requests to intervene, finding that the newspaper "does have a direct and apparent right sufficient to give it standing to intervene in these actions," and granted the sons' motions as well. The court, however, denied the newspaper's request for access to the sealed divorce records, as it found that:

> "In these long-terminated marital actions, the files in question were sealed by the Court at the close of the litigation upon the request of the divorce litigants and with the approval of the trial judge. Despite the longstanding policy in this state favoring open judicial proceedings and court records, we are unwilling to overturn the decision of the trial court in these cases where there has been no evidence presented that the balance accorded by the trial judges in these cases should be shifted in favor of the press. This is particularly true where the petitioner's motive appears to be to promote public scandal by exposing the most private aspects of the divorce litigants' marital lives."

The Keene Sentinel appealed.

Before this Court, the newspaper argues that the superior court correctly granted its requests to intervene, but that regardless of

the propriety of that ruling, we have jurisdiction to reverse the superior court's decision maintaining nondisclosure of the divorce records pursuant to our supervisory powers over the trial courts. Regarding the merits of its petitions, the Keene Sentinel contends that the superior court committed error by placing upon it the burden of proof, and failed to tailor its order in the least restrictive manner. Moreover, it argues that disclosure should have been permitted under RSA chapter 91-A, the Right-To-Know Law.

The Douglases first argue that the trial court should not have granted the newspaper intervenor status because the Keene Sentinel has no proper interest in the divorce cases, and because its request was untimely. In addition, they contend that the newspaper's right to access is outweighed by the families' privacy rights. Finally, the Douglases assert that neither the Right-To-Know Law nor our supervisory powers apply to this case.

We begin by addressing the procedural issue, whether the trial court properly granted Keene Sentinel's requests to intervene in these closed cases. It is argued that the procedure used by Keene Sentinel in seeking to intervene was improper because the newspaper's interest is not "'direct and apparent.'" R. WIEBUSCH, 4 NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE § 176, at 129–30 (1984) (quoting *Pike v. Pike*, 24 N.H. 384, 394 (1852)); *see also Snyder v. N.H. Savings Bank*, 134 N.H. 32, 34, 592 A.2d 506, 507 (1991) (right to intervene is determined as matter of discretion of trial court). The newspaper has no direct and apparent interest as would a party in the subject matter of the underlying litigation that would warrant its intervention as a party. The newspaper, as well as any member of the public, however, has standing, without having to be made a party in a case, to request access to court records. The newspaper sought to do so through intervention. Procedurally, this case more appropriately should have been initiated by a petition for access to the sealed records. *Cf. Keene Publishing Corp. v. Cheshire County Super. Ct.*, 119 N.H. 710, 406 A.2d 137 (1979); *Keene Pub. Corp. v. Keene Dist. Ct.*, 117 N.H. 959, 380 A.2d 261 (1977). Because this is a question of form and not substance, we conclude that the newspaper's choice of procedure should not jeopardize its pursuit of a potentially meritorious claim. Given our treatment of this procedural issue, we need not address the newspaper's arguments concerning either our supervisory powers under RSA 490:4 or the Right-To-Know Law.

The Douglases next argue that this action is procedurally barred by the three-year "general statute of limitations." *See* RSA

508:4 (Supp. 1991) (personal actions). None of our many specific statutes of limitations can be interpreted to hinder a citizen's right to seek disclosure of court records. Moreover, we are aware of no jurisdiction which applies a general or specific statute of limitations to a claim brought seeking such access. We hold that the right to seek access is not time-barred, and the Keene Sentinel's request is therefore timely.

We proceed to the substantive issues raised in the case. Although the Keene Sentinel bases its claim on both Federal and State constitutional grounds, our decision today rests solely on our interpretation of the New Hampshire Constitution. *See State v. Ball*, 124 N.H. 226, 232, 471 A.2d 347, 351 (1983). We look to cases from other jurisdictions for guidance, but we do not rely on them to arrive at our conclusion. *See Michigan v. Long*, 463 U.S. 1032, 1039–41 (1983). Those portions of the New Hampshire Constitution relevant to our decision are as follows:

> *Part I, article 8.* "All power residing originally in, and being derived from, the people, all the magistrates and officers of government are their substitutes and agents, and at all times accountable to them. Government, therefore, should be open, accessible, accountable and responsive. To that end, the public's right of access to governmental proceedings and records shall not be unreasonably restricted."

> *Part I, article 22.* "Free speech and liberty of the press are essential to the security of freedom in a state: They ought, therefore, to be inviolably preserved."

*Cf. Opinion of the Justices*, 111 N.H. 175, 177, 278 A.2d 475, 477 (1971) (pt. I, art. 8 must be read in conjunction with pt. I, art. 7, providing that "[t]he people of this state have the sole and exclusive right of governing themselves as a free, sovereign, and independent state . . . .").

The Keene Sentinel correctly notes that this is not the first time we have had to determine a newspaper's right of access to court records, a question which implicates both constitutional provisions quoted above. In *Thomson v. Cash*, 117 N.H. 653, 377 A.2d 135 (1977), we stated that "[t]he courts of New Hampshire have always considered their records to be public, absent some overriding consideration or special circumstance," *id.* at 654, 377 A.2d at 136, and held that the burden of proof rests with the party seeking nondisclosure, *id.* Relying on several specific nondisclosure provisions in the Superior Court Rules, including one relating to support affidavits filed in

marital cases, SUPER. CT. R. 158 (formerly Rule 243), we concluded that "[t]he existence of these rules implies that *otherwise,* absent special circumstances, those things which are filed in court in connection with a pending case are open to public inspection." *Id.* (emphasis added); *see also Barron v. Florida Freedom Newspapers, Inc.,* 531 So. 2d 113, 119 (Fla. 1988).

Again, in *Keene Publishing Corp. v. Keene District Court,* 117 N.H. 959, 380 A.2d 261, we placed the burden of proof on the party seeking nondisclosure, because the "'presumption is strongly in favor of open judicial proceedings and unsealed records.'" *Id.* at 962, 380 A.2d at 263 (quoting Legal Advisory Committee on Fair Trial and Free Press, Draft at 2 (August 1, 1977)). We explained, "[i]n this state the press has been held to have a right, though not unlimited, to gather news so as to effectuate the policy of our constitution that a free press is 'essential to the security of freedom in a state.'" *Id.* at 961, 380 A.2d at 262 (quoting N.H. CONST. pt. I, art. 22). "Our constitution quite consciously ties a free press to a free state, for effective self-government cannot succeed unless the people have access to an unimpeded and uncensored flow of reporting. News gathering is an integral part of the process." *Opinion of the Justices,* 117 N.H. 386, 389, 373 A.2d 644, 647 (1977). These standards and sentiments were reiterated once more in *Keene Publishing Corp. v. Cheshire County Superior Court,* 119 N.H. 710, 406 A.2d 137.

In response to this consistent authority in favor of public access, the Douglases offer several arguments. First, they point out that *Keene Publishing Corp. v. Cheshire County Superior Court* and *Keene Publishing Corp. v. Keene District Court* were both criminal cases, not civil cases, and that therefore their holdings should not be extended to cover marital cases such as these. The Douglases offer no reason why such a distinction should make a difference in our conclusion, and we can discern none. *See Publicker Industries, Inc. v. Cohen,* 733 F.2d 1059, 1070 (3d Cir. 1984) (first amendment right of access to judicial proceedings applies to civil as well as criminal cases). In unequivocal language, part I, article 8 of the New Hampshire Constitution provides for the openness, accessibility, accountability and responsiveness of government. Furthermore, part I, article 8 specifically provides that in aid of the foregoing "the public's right of access to governmental proceedings and records shall not be unreasonably restricted." These constitutional provisions make no explicit distinction between civil and criminal records, and none can reasonably be implied. *Thomson v. Cash* and *Opinion of the*

*Justices* both involved civil matters and were cited in the *Keene Publishing* cases. *Keene Publishing Corp. v. Cheshire County Super. Ct.*, 119 N.H. at 711, 406 A.2d at 138 (citing *Opinion of the Justices*); *Keene Pub. Corp. v. Keene Dist. Ct.*, 117 N.H. at 961, 963, 380 A.2d at 262, 263 (citing *Opinion of the Justices* and *Thomson v. Cash*).

■ Second, the Douglases contend that the Keene Sentinel has no proper interest in viewing the divorce records, but instead, as an "opposition newspaper[ ]," is motivated solely by "malicious political intent." The motivations of the Keene Sentinel—or any member of the public—are irrelevant to the question of access. We cannot dictate what should and should not interest the public. Were the court to do so we would overstep our judicial authority by substituting our preferences for those of the individual. Accessibility of information assumes and encourages a community of people free to think as it chooses and act according to its collective will.

■ Third, the Douglases argue that their right to privacy with regard to family and marital matters outweighs the newspaper's right to access and that, therefore, none of their sealed documents should be opened to the public. We cannot accept such a blanket assertion of the privacy right. Courts, as an integral part of the government of our State, are required by part I, article 8 of our constitution to be "open" and "accessible." They are public forums. A private citizen seeking a divorce in this State must unavoidably do so in a public forum, and consequently many private family and marital matters become public. "[P]arties seeking a dissolution of their marriage are not entitled to a private court proceeding just because they are required to utilize the judicial system." *Barron v. Florida Freedom Newspapers, Inc.*, 531 So. 2d at 119. Under part I, article 8, the public has a right of access to court proceedings and to court records which cannot be "unreasonably restricted." We hold that under the constitutional and decisional law of this State, there is a presumption that court records are public and the burden of proof rests with the party seeking closure or nondisclosure of court records to demonstrate with specificity that there is some overriding consideration or special circumstance, that is, a sufficiently compelling interest, which outweighs the public's right of access to those records. *See* N.H. CONST. pt. I, art. 8; *Keene Publishing Corp. v. Cheshire County Super. Ct.*, 119 N.H. 710, 406 A.2d 137; *Keene Publishing Corp. v. Keene Dist. Ct.*, 117 N.H. 959, 380 A.2d 261; *Thomson v. Cash*, 117 N.H. 653, 377 A.2d 135; *Opinion of the Justices*, 111 N.H. 175, 278 A.2d 475.

■ Finally, the Douglases contend that the Keene Sentinel's request to unseal the divorce records is untimely. Each New Hampshire case involving access, they point out, concerned a dispute over access to records during the pendency of a case, not thirteen or nine years after a final decision had been reached, as in the instant case. If the Keene Sentinel wished to obtain access to the divorce records, they argue, it should have made a request while the cases were still pending. We consider such a limitation as placing too great a burden on those seeking access to court records. No one can accurately determine in advance when access to court records may be sought or for what purpose. To rule as the Douglases suggest would result in an unreasonable restriction and would undermine the efficacy of the guarantees under part I, article 8.

In further support of their argument that the Keene Sentinel's petition is untimely, the Douglases assert that they might have to appear in court repeatedly to defend their nondisclosure order. This issue is not presented by the facts in this case and, therefore, we do not address it.

We now address whether or not the superior court erred in denying access to the sealed divorce records. There is no indication in the record before us that the trial court which issued the original orders to seal the records engaged in any balancing process to determine if the interests asserted by the Douglases in support of their request to seal were sufficiently compelling to outweigh the public's right of access. Apparently the records were simply sealed at the request of the parties. The petitioner certainly was not present to assert its claim of access at the time the records were sealed. Our reading of the court's order in this case indicates that it deferred to the original orders to seal and incorrectly placed the burden on the petitioner to show that it had a right of access to these records. Therefore, it appears that insufficient safeguards were used in the decision-making process to protect the guarantees of part I, articles 8 and 22 of the State Constitution.

■ The Douglases cannot prevail in their claim to keep the records sealed merely by asserting a general privacy interest. The petitioner's right of access to the sealed records must be weighed and balanced against privacy interests that are articulated with specificity. In order for this exacting process to be accomplished, the trial judge must review each document to which access is sought and for which a specific right of privacy is claimed to determine if there is a sufficiently compelling reason that would justify preventing public

access to that document, with the burden of proof resting on the party seeking nondisclosure. Before a document is ordered sealed, the trial judge must determine that no reasonable alternative to nondisclosure exists. In addition, the trial judge must use the least restrictive means available to accomplish the purposes sought to be achieved. This procedure was not followed in these cases.

As our previous decisions are not particularly instructive to the trial court when addressing issues such as those involved in this case, we now set forth the procedures and standards to be used when a member of the public or the media seeks access to sealed court records:

1. When a member of the public or the media seeks access to a court record and is denied access because the record has been sealed, the party seeking access shall file a petition with the court requesting access to the record in question (*i.e.* Petition For Access To Court Records). Upon receipt of the petition, orders of notice shall issue to the parties in the original action.

2. The court shall separately examine each document in question *in camera* (in chambers with only counsel for the parties and for the petitioner present) on the record. During the *in camera* hearing, it shall rest within the sound discretion of the trial judge, taking into consideration the particular circumstances of the case at hand, to determine whether and to what extent the content of any document is to be revealed to a petitioner. There will be instances where the claimed countervailing rights of a party (for example, constitutional rights of a defendant in a criminal case or statutory provisions granting or requiring confidentiality in certain cases) must not be rendered moot pending final resolution of the access issue. When appropriate, the document's subject matter, however, can be described in general terms such that persons objecting to closure can present an adequate argument to the court.

3. The court shall determine if there is some overriding consideration or special circumstance, that is, a sufficiently compelling interest, that would justify preventing public access to the records. *Thomson v. Cash*, 117 N.H. 653, 377 A.2d 135. The party seeking closure or nondisclosure bears the burden of proof under the standard set forth above. There is a presumption that court records are public. The court must determine that no reasonable alternative to nondisclosure exists and must use the least restrictive means necessary to effectuate the purposes sought to be achieved. For exam-

ple, instead of sealing an entire document because it has been determined that parts of it should not be accessible to the public, the court should consider if redaction of those parts is the appropriate least restrictive means.

4. The court shall issue a general conclusory order setting forth its holding, and in a separate order shall set forth specific findings of fact and rulings of law to support its conclusion. The general conclusory order shall be made public. The specific order together with the record of the *in camera* proceeding shall be sealed.

5. In the event of an appeal, no access to the documents in question shall be granted until the matter has been finally resolved.

We remand to the superior court for a new hearing in accordance with the procedures and standards enunciated in this opinion.

*Reversed and remanded.*

BROCK, C.J., BATCHELDER, THAYER, and HORTON, JJ., did not sit; CANN, J., retired superior court justice, DICLERICO, C.J., TEMPLE, and MURPHY, JJ., superior court justices, sat by special assignment under RSA 490:3; all concurred.