Keene District Court
No. 2001-251

## PETITION OF STATE OF NEW HAMPSHIRE (BOWMAN SEARCH WARRANTS)

July 16, 2001

*Philip T. McLaughlin,* attorney general (*Simon R. Brown,* assistant attorney general, on the brief and orally), for the State.

*Orr & Reno, P.A.,* of Concord (*William L. Chapman* on the brief and orally), for the Keene Publishing Corporation.

BRODERICK, J. By petition for writ of certiorari, the State appeals an order of the Keene District Court (*Talbot,* J.) unsealing certain search warrants, search warrant applications, supporting affidavits and returns. We reverse.

I

The record reveals the following facts. Prior to the weekend of February 3 and 4, 2001, Tina Sinclair and her daughter, Bethany, lived in West Chesterfield at the residence of Tina's boyfriend, Eugene Van Bowman (Bowman). Tina last went to her job and Bethany last attended school on February 2. On February 12, the Chesterfield Police Department began investigating the Sinclairs' disappearance. On February 28, the State Police and the Attorney General's Office joined the investigation.

On April 5, the State sought and obtained a search warrant from the Keene District Court. The warrant authorized a search of the Bowman residence and was executed on the morning of April 6. During the search, the State obtained two additional search warrants from the district court. Upon the State's motion, the court sealed all of the search warrants, the warrant applications, supporting affidavits and returns. During the search, various items of property identified in the warrants were seized. In accordance with RSA 595-A:5 (1986), the State Police left at the Bowman residence copies of each search warrant and a receipt for the property seized. The search concluded on the night of April 7.

On April 16, the Keene Publishing Corporation (Keene Publishing) filed a petition to unseal the search warrants and related court records. It based its petition on New Hampshire common law, Part

I, Articles 8 and 22 of the State Constitution and RSA 595-A:4 (1986). Keene Publishing requested an expedited hearing. On or about April 17, Bowman filed a motion to be joined as a party.

At an *in camera* hearing on April 20 with counsel for all parties present, the State acknowledged the public's general right of access to court records, but argued that there were sufficiently compelling interests which required the records to remain temporarily sealed. It asserted a substantial State and public interest in allowing law enforcement to investigate potential criminal activity and to preserve the integrity of its investigations. The State argued that if the documents sought were disclosed the focus and the scope of the investigation would be made public, thus alerting potential suspects, who in turn might hinder the investigation by destroying evidence or coordinating stories. In addition, the State contended that premature disclosure could adversely affect the ability of law enforcement officials to obtain untainted statements from potential witnesses and could make those who had already provided information reluctant to cooperate in the future. Furthermore, the State asserted that it had a compelling interest in protecting a defendant's right to a fair trial, a right which could be adversely affected by premature disclosure of the sealed documents, and that releasing the documents before an indictment might interfere with the grand jury process. The State also asserted that it had complied with RSA 595-A:5 and although Bowman was a target of the investigation, he had no constitutional right to discovery unless and until he was charged with a crime. The State explained that although Bowman was "referenced quite heavily" in the affidavits, it was not possible at present to rule out other potential suspects. In addition, the State pointed out that RSA 595-A:6 (Supp. 2000) provided a statutory remedy for the return of seized property.

Keene Publishing argued that the State failed to demonstrate a clear and present danger to its investigation to justify sealing the records. It asserted that the State was not permitted to rely upon hypothetical concerns, but needed to show that the release of specific information contained in the sealed documents posed an actual threat to the investigation. It also contended that the State should be required to make a line-by-line showing of any articulated threat. In response to this argument, the State requested that, if the court engaged in a line-by-line analysis, it focus on paragraphs 22, 23 and 24 of the affidavits, which related to interviews with witnesses, all of whom, if identified, might be unwilling to cooperate in the future. Bowman asserted that he had standing to seek *in camera* review of the sealed records to challenge the constitution-

ality of the search and seizure of his property and to determine if releasing the documents would affect his right to a fair trial and effective assistance of counsel.

The district court ruled in favor of Keene Publishing and required only that the names of two individuals be redacted from the affidavit supporting the first search warrant. The court declared that the case was "clearly governed by *Petition of Keene Sentinel*, [136 N.H. 121 (1992)]" and that "[t]he presumption is strongly in favor of unsealed court records, and therefore the State, as the party seeking nondisclosure, has the burden of proof." The court did not distinguish between the assertions made by Keene Publishing or Bowman.

Relying upon two recent cases, *Douglas v. Douglas*, 146 N.H. 205 (2001), and *Chapman v. Douglas*, 146 N.H. 209 (2001), as well as *Petition of Keene Sentinel*, 136 N.H. 121, the court ruled that the State offered "no specific reason which would justify the withholding of the records from public view." To support its decision to unseal the records, the court identified the media interest in the case, the fact that no crime had been charged, the likelihood that any trial would take place in the indefinite future, that Bowman was then incarcerated on felony charges and that no other persons were being sought. This appeal followed.

## II

The State contends that: (1) the district court erred in finding that it had not demonstrated any compelling interest to justify the temporary sealing of the documents; and (2) Bowman has no independent statutory or constitutional right to obtain access to the documents supporting the search warrants and that such access could hinder the on-going investigation.

Keene Publishing's petition to unseal the search warrant records relied upon Part I, Articles 8 and 22 of the State Constitution, RSA 595-A:4 and New Hampshire common law. On appeal, the State relies upon New Hampshire common law and Part I, Article 8 of the State Constitution and references federal case law, especially those cases analyzing a First Amendment right of access to court records, to argue that the evidence presented to the district court established a sufficiently compelling interest to override the presumption in favor of access. Because the issues raised involve only New Hampshire law, we decide this case on State law only, considering cases from the federal courts only as an analytical aid. *See State v. Weeks*, 141 N.H. 248, 249 (1996).

The New Hampshire constitutional and statutory provisions relevant to our decision are as follows:

> All power residing originally in, and being derived from, the people, all the magistrates and officers of government are their substitutes and agents, and at all times accountable to them. Government, therefore, should be open, accessible, accountable and responsive. To that end, the public's right of access to governmental proceedings and records shall not be unreasonably restricted.

N.H. CONST. pt. I, art. 8.

> Free speech and liberty of the press are essential to the security of freedom in a state: They ought, therefore, to be inviolably preserved.

N.H. CONST. pt. I, art. 22.

> Upon the return of said warrant, the affidavit and the notes or transcript shall be attached to it and shall be filed therewith, and they shall be a public document when the warrant is returned, unless otherwise ordered by a court of record.

RSA 595-A:4.

■ In *Petition of Keene Sentinel* we recognized that the New Hampshire Constitution creates a public right of access to court records. *See Petition of Keene Sentinel*, 136 N.H. at 128. This right of access is not, however, absolute, and may be overcome when a sufficiently compelling interest for nondisclosure is identified. *See id.* at 130; *see also Thomson v. Cash*, 117 N.H. 653, 654 (1977) ("The courts of New Hampshire have always considered their records to be public, absent some overriding consideration or special circumstance.").

In this case, the State does not dispute that there is a presumptive right of public access to court records, but argues that the evidence presented to the trial court clearly outweighed the presumption. Therefore, the only issue before us is what constitutes an "overriding consideration or special circumstance" — a sufficiently compelling interest — to overcome the presumption of access to search warrants and associated documents in an on-going, pre-indictment criminal investigation. *See Petition of Keene Sentinel*, 136 N.H. at 130. This is an issue of first impression for this court.

New Hampshire's presumptive right of access to court records and the proper procedures to evaluate it, developed in *Petition of*

*Keene Sentinel*, resemble closely the common law test articulated by the United States Supreme Court in *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597-99 (1978). In that case, the Court, in deciding whether to release White House tape recordings of former President Nixon and his advisors, articulated the common law right in a way which is now accepted as the standard. *See Nixon*, 435 U.S. at 591-96, 599; *see also, e.g., Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 65 (4th Cir. 1989). "[T]he decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 599.

Although we do not adopt a *per se* rule to defeat disclosure, like that which appears to be developing in the federal courts, we respect the logic of those cases which articulate the need for sealing search warrants and accompanying documents in the pre-indictment stage of an on-going criminal investigation. *See, e.g., Baltimore Sun*, 886 F.2d at 65; *Times Mirror*, 873 F.2d at 1216; *In re Search Warrant for Secretarial Area — Gunn*, 855 F.2d 569, 575 (8th Cir. 1988). The Eighth Circuit Court of Appeals, in deciding whether to seal "affidavits and other materials attached to the search warrants," found that:

> The government ha[d] demonstrated that restricting public access to these documents [wa]s necessitated by a compelling government ·interest — the ongoing investigation [itself].

*Gunn*, 855 F.2d at 574. The Ninth Circuit Court of Appeals determined that the First Amendment did not afford a right of access to search warrants and supporting affidavits relating to an ongoing, pre-indictment investigation. *See Times Mirror*, 873 F.2d at 1212-18. The Fourth Circuit Court of Appeals has also decided that "the press does not have a first amendment right of access to an affidavit for a search warrant." *Baltimore Sun*, 886 F.2d at 64. The court determined that the "the first amendment right of access fails," *id.*, because the process has not "historically been open to the press and general public," *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8 (1986). The court relied upon "common sense" to derive from the closure of the search warrant process the closure of search warrant affidavits. *See Baltimore Sun*, 886 F.2d at 64.

In New Hampshire, as in other States, search warrants are issued *ex parte. See, e.g., State ex rel Childs v. Hayward*, 109 N.H. 228, 230 (1968). Indeed, courts have long recognized that procedures for obtaining a search warrant require secrecy. *See, e.g., Times Mirror*,

873 F.2d at 1214 ("[W]e find no historical tradition of open search warrant proceedings and materials."); *Franks v. Delaware*, 438 U.S. 154, 169 (1978) ("[T]he subject of the search cannot be tipped off to the application for a warrant.").

> Historical experience, which counsels in favor of finding a First Amendment right of access to the criminal trial, to voir dire, and to preliminary hearings, furnishes no support for the claimed right of access to warrant proceedings . . . . On the contrary, the experience of history implies a judgment that warrant proceedings and materials should not be accessible to the public, at least while a pre-indictment investigation is still ongoing as in these cases.

*Times Mirror*, 873 F.2d at 1214 (citations omitted).

It is evident that public disclosure of search warrants and accompanying documents would allow the public to examine the way in which the search and the investigation are conducted. *See id.* at 1215. The threat to an on-going, pre-indictment criminal investigation, however, most often significantly outweighs any possible benefits from public disclosure. *See, e.g., Baltimore Sun*, 886 F.2d at 64; *Times Mirror*, 873 F.2d at 1213, 1215. The Supreme Court has explained the dangers of opening pre-indictment processes to the public.

> First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment.

*Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 219 (1979). Once individuals have been tipped off to the nature and scope of an investigation, evidence may be destroyed prior to a search or after a search. *See, e.g., Baltimore Sun*, 886 F.2d at 64; *Times Mirror*, 873 F.2d at 1214-15. Having been revealed, witnesses may fear retaliation and refuse to cooperate with law enforcement during the crucial early stages of the investigation. *See, e.g., Ballimore Sun*, 886 F.2d at 64; *Times Mirror*, 873 F.2d at 1214-15. Individuals involved in criminal activity would be given the opportunity to craft stories to fit the current state of the investigation or to coordinate stories with

others who, in fact, participated. *See, e.g., Baltimore Sun*, 886 F.2d at 64; *Times Mirror*, 873 F.2d at 1214-15.

In addition, several courts, including the United States Supreme Court, have expressed concern about releasing court documents that reveal the identities of individuals who ultimately prove to be innocent. *See Douglas Oil*, 441 U.S. at 219; *Times Mirror*, 873 F.2d at 1216.

> [A] search warrant affidavit may supply only the barest details of the government's reasons for believing that an individual may be engaging in criminal activity . . . [but,] even . . . this minimal information[,] may indicate to the public that government officials have reason to believe that persons named in the search warrant have engaged in criminal activity. Moreover, persons named in the warrant papers will have no forum in which to exonerate themselves if the warrant materials are made public before indictments are returned. Thus, possible injury to privacy interests is another factor weighing against public access to warrant materials during the pre-indictment stage of an investigation.

*Times Mirror*, 873 F.2d at 1216.

Noting that "search warrant proceedings are one step back from the convening of a grand jury," the Ninth Circuit Court of Appeals stated:

> [P]ublic access would hinder . . . the warrant process and the government's ability to conduct criminal investigations. In this regard, warrant proceedings are indistinguishable from grand jury proceedings, which the Supreme Court has identified as the classic example of the type of government operation that would be totally frustrated if conducted openly.

*Times Mirror*, 873 F.2d at 1215-16 (quotations and brackets omitted). Traditionally, this court has recognized the secrecy of grand jury proceedings. *See State v. Vanderheyden*, 132 N.H. 536, 537 (1989). To protect that secrecy, "the common law require[s] excluding unauthorized persons from both the investigations and the deliberations of the grand jury." *Id.* (quotations and brackets omitted). These concerns are not limited to grand jury proceedings, but extend to the search warrant process and the documents involved as well. *See Times Mirror*, 873 F.2d at 1215 ("We believe

that secrecy is no less important to the process of investigating crime for the purpose of obtaining evidence to present to a grand jury."). Reviewing federal and state case law, "[i]t appears, without dispute, that at least up to some ill-defined point in the process, the press and public have been generally excluded from the warrant process. Such exclusion does not raise [constitutional] considerations." *Matter of Office Suites for World & Islam Studies*, 925 F. Supp. 738, 741 (M.D. Fla. 1996).

■ In general, criminal cases present considerations not present in civil cases. In order to preserve the legitimate public interest in the integrity of on-going, pre-indictment criminal investigations and to protect the rights of the individuals involved, including the defendant's right to a fair trial should a defendant be identified, we prefer to recognize a qualified right of access to court records for a reasonable time in order not to jeopardize the State's ability to conduct a proper criminal investigation. Therefore, in applying the *Petition of Keene Sentinel* test to court records associated with an on-going criminal investigation, we hold that in most pre-indictment criminal investigations, the existence of an investigation itself will provide the "overriding consideration or special circumstance, that is, a sufficiently compelling interest, that would justify preventing public access to the records." *Petition of Keene Sentinel*, 136 N.H. at 130. This presumption for ongoing, pre-indictment criminal investigations fits snugly within the framework set out in *Petition of Keene Sentinel*, 136 N.H. 121, and squarely within New Hampshire, and federal, jurisprudence.

## III

The district court in this case concluded that the State failed to establish a sufficiently compelling interest to justify nondisclosure. Although we reverse the district court because, in the context of this case, the burden it imposed upon the State was too high, we decline to remand to the district court for application of the test we articulate today because we can review the same documents and transcript available to the district court.

■ This case is precisely the type of case which should be afforded the protection from disclosure we articulate today. It arises out of a complex on-going criminal investigation in which no indictments have been returned, and no arrests have been made. The investigation began only five months ago when law enforcement

started searching for two individuals who disappeared, seemingly without a trace. The cooperation of witnesses and the existence of evidence, especially evidence that may yet be discovered, is crucial to the investigation. The secrecy of the nature and scope of the investigation is critical to ensure that potential suspects are not able to avoid detection. New Hampshire is a small State in which certain criminal cases are widely reported and followed keenly by the public. With the proliferation of access to the Internet and "on-demand" access to news and other information, the media and the eyes of the public may invade small rural communities during the duration of an investigation. This alone may serve to compromise cooperation of those with helpful information. Although the case is apparently proceeding under the assumption of wrongdoing, little is publicly known about what happened to Tina and Bethany Sinclair. Based upon a document-by-document review of the record before us, the State has satisfied its burden of proof by making a strong showing that disclosure of the search warrants, applications, affidavits and returns would impede its ongoing, pre-indictment, pre-arrest criminal investigation into a matter which may involve serious wrongdoing.

The State requested that the documents not be disclosed to allow the investigation to proceed. We grant that request. In the event that further proceedings occur in the district court, they shall be governed by the standard we articulate today, which requires a fact-specific inquiry of, among other factors, those discussed in this opinion.

### IV

Because the district court did not address separately the arguments presented by Bowman and in light of our disposition of this case, we need not address the State's second argument; namely, that Bowman has no statutory or constitutional right to obtain access to the documents supporting the search warrants and that such access could hinder the on-going investigation. Until the search warrant records are unsealed or Bowman presents a cognizable right which requires access, he cannot obtain access to the sealed records.

*Reversed.*

BROCK, C.J., and NADEAU, DALIANIS and DUGGAN, JJ., concurred.