NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

8th Circuit Court-Jaffrey Family Division
No. 2014-0765

IN RE N.B.;

IN RE J.B.

Argued: April 5, 2016
Opinion Issued: August 19, 2016

Rilee & Associates, P.L.L.C., of Bedford (Cyrus F. Rilee, III on the brief), and Zimble & Brettler, LLP, of Boston, Massachusetts (Charles R. Capace on the brief and orally), for Tammy Cole.

Joseph A. Foster, attorney general (MaryBeth Misluk, attorney, on the memorandum of law and orally), for the New Hampshire Division for Children, Youth and Families.

Nixon Peabody LLP, of Manchester (W. Daniel Deane and Mark Tyler Knights on the brief, and Mr. Deane orally), for CASA of New Hampshire.

LYNN, J. The appellant, Tammy Cole, appeals an order of the Circuit Court (Forrest, J.), which ruled, in part, that in the event Cole institutes an action for damages against the New Hampshire Division for Children, Youth

and Families (DCYF) and/or Court Appointed Special Advocates of New Hampshire (CASA) or their agents or employees, the case must be filed as confidential and the pleadings submitted under seal.  Because we find that the court's ruling constitutes an unconstitutional prior restraint on speech, we reverse this part of the order.

The record reflects the following facts.  Tammy Cole is the biological grandmother of N.B. and J.B.  In May 2012, DCYF filed a petition alleging that N.B. and J.B. had been neglected by their biological parents.  See RSA 169-C:7, I (2014).  The court appointed CASA to serve as the children's guardian ad litem.  After the court made a finding of neglect and awarded DCYF legal custody, DCYF removed N.B. and J.B. from their parents' home and placed them in Cole's physical custody.  In November 2013, the biological parents sexually abused N.B. and J.B. during an unsupervised visit.  The court subsequently terminated the biological parents' parental rights, and the abuse and neglect case was closed.  In May 2014, Cole and her husband adopted the children.

In July, Cole filed a motion in the circuit court seeking to copy the court's records relating to the children's abuse and neglect case.  Cole also notified DCYF and CASA that N.B. and J.B. had potential negligence claims against these agencies based upon the abuse that occurred while the children were in the legal custody of DCYF.  DCYF and CASA objected to Cole's motion and each requested a protective order.  DCYF and CASA argued that Cole was not entitled to make a copy of the court record, and CASA requested that the court grant a protective order limiting Cole's inspection of the records to review at the courthouse and limiting disclosure of the court file.

After a hearing, the court granted Cole's motion to copy records and also granted CASA's request for a protective order, in part.  It first concluded that Cole was entitled to "inspect" the court's records pursuant to RSA 169-C:25, I(a) (2014), which creates an exception to the confidentiality of court records of abuse and neglect proceedings that allows the records to be accessed by parents and certain other persons.  Next, the court concluded that Cole's ability to "inspect" the court records did not preclude making a copy of the records to review outside of the court.  Turning to the requests for protective orders to limit the disclosure of the contents of the court records, the court "recognize[d] that a nondisclosure order constitutes a prior restraint on Ms. Cole's first amendment rights, and that it is permissible only if it is narrowly tailored to serve a compelling state interest."  After balancing Cole's right to free speech against the children's right to privacy and the State's interest in protecting that privacy, the court concluded that it saw no need for the details of the case to be discussed with the media, but that any protective order should be tailored to give Cole the ability to file a civil suit on behalf of N.B. and J.B.  To meet the competing interests it identified, the court made three rulings pertaining to Cole's use of the records:

1) Ms. Cole and/or her counsel may obtain a full copy of the court records for her adoptive children's nonpublic proceedings.

2) Neither Ms. Cole nor her counsel nor anyone else who is entitled, through her, to access the juvenile court records may disclose those materials publicly, whether through self-publication or through sharing those materials with journalists or other private individuals not directly involved in the present case.

3) In the event that Ms. Cole proceeds with her planned civil suit, the pleadings are to be filed under seal and the case is to be filed as confidential. The framework set out in Petition of Keene Sentinel, 136 N.H. 121 (1992) can then be applied by the court before which the case is filed.

Cole moved for reconsideration of the third part of the order. The court denied the motion, and this appeal followed.

On appeal, Cole challenges only the third part of the trial court's order, which requires that any future case be filed as confidential and the pleadings filed under seal. She argues that this constitutes a prior restraint on free speech that violates her rights under the New Hampshire and United States Constitutions because it is neither narrowly tailored nor does it serve a compelling State interest. Further, she asserts that it impermissibly places the burden upon her, instead of on the parties seeking nondisclosure, and that it unfairly restricts her disclosure while allowing others to disclose the same information. DCYF and CASA argue that there are a number of compelling State interests that justify the order and that the order is narrowly tailored to serve these interests as it is limited in both scope and duration. Because Cole does not challenge the second part of the trial court's order, which precludes her from publicly disclosing the court records, and because it would violate this part of the order if she were to publicly file information derived from the juvenile court records in a superior court proceeding, we interpret her challenge to the third part of the order to be limited to the requirement that she file under seal the portions of any future pleading that do not derive from the court records.

As a preliminary matter, Cole argues that DCYF and CASA lack standing to seek a nondisclosure order in any future suit because the neglect case involving the children is closed, the children have been legally adopted, DCYF does not have custody of the children, and CASA no longer serves as their guardian ad litem. Cole did not raise the issue of standing in the trial court. However, "[w]hether a party has standing presents a question of subject matter jurisdiction, which may be addressed at any time." In re Guardianship of Williams, 159 N.H. 318, 323 (2009).

3

Both DCYF and CASA are defined by statute as parties to proceedings under RSA chapter 169-C. See RSA 169-C:3, XXI-a (2014) ("'Party having an interest' means the child; the guardian ad litem of the child; the child's parent, guardian or custodian; the state; or any household member subject to court order."). Among other things, parties may object to certain requests to access court records. See RSA 169-C:25, I(b) (2014). We disagree with Cole that the parties lose standing to seek a protective order regarding nondisclosure once a case is closed. Our case law establishes that the burden is on a party seeking closure or nondisclosure of court records. Petition of Keene Sentinel, 136 N.H. 121, 128 (1992). To lose standing once a case is closed makes little sense because it would allow anyone to easily obtain confidential or sealed court records after a case is closed if the party who must defeat disclosure does not have standing to object. This result would undercut the purpose of maintaining confidential court records. In addition, the rules of the family division of the circuit court recognize that parties' interests continue after a case is closed. See Fam. Div. R. 1.30 ("In closed cases, the Court shall order that the petitioner notify the parties of the petition to grant access . . . ."). Moreover, to the extent Cole argues that under Troxel v. Granville, 530 U.S. 57 (2000) (plurality opinion), her status as a fit parent deprives DCYF and CASA of standing to object to her filing suit, we disagree. The issue in Troxel was not one of standing, but rather, was based on the merits of the case, particularly the substantive due process rights of a parent. Troxel, 530 U.S. at 65-67. As we have explained, DCYF and CASA have sufficient interests at stake to defend the trial court's order. We therefore conclude that DCYF and CASA have standing.

We now turn to the substantive issue in this case. Cole argues that the third part of the trial court's order constitutes a prior restraint on free speech in violation of her rights under the New Hampshire and United States Constitutions. See N.H. CONST. pt. I, art. 22; U.S. CONST amends. I, XIV. She also suggests that it impermissibly limits public access to the courts and court records, in violation of our State Constitution. See N.H. CONST. pt. I, art. 8. We review the trial court's analysis of questions of constitutional law de novo. City of Keene v. Cleaveland, 167 N.H. 731, 737 (2015). We first address Cole's claim under the State Constitution and rely upon federal law only to aid our analysis. See State v. Ball, 124 N.H. 226, 231-33 (1983).

The New Hampshire Constitution provides: "Free speech and liberty of the press are essential to the security of freedom in a state: They ought, therefore, to be inviolably preserved." N.H. CONST. pt. I, art. 22. Our constitution also states that "[g]overnment . . . should be open, accessible, accountable and responsive. To that end, the public's right of access to governmental proceedings and records shall not be unreasonably restricted." N.H. CONST. pt. I, art. 8.

4

Cole contends that requiring her to treat a lawsuit on behalf of her children as confidential by filing it under seal amounts to an unconstitutional prior restraint. "Courts and commentators define prior restraint as a judicial order or administrative system that restricts speech, rather than merely punishing it after the fact." Mortgage Specialists v. Implode-Explode Heavy Indus., 160 N.H. 227, 240 (2010). "Temporary restraining orders and permanent injunctions — i.e., court orders that actually forbid speech activities — are classic examples of prior restraints." Id. at 241 (quotation omitted). "The danger of a prior restraint is that it has an immediate and irreversible sanction which freezes speech at least for the time." Id. at 241-42 (quotations omitted). "Prior restraints are inherently suspect because they threaten the fundamental right to free speech," State v. Chong, 121 N.H. 860, 862 (1981), and "are the most serious and the least tolerable infringement on First Amendment rights," Mortgage Specialists, 160 N.H. at 241 (quotation omitted). "For these reasons, any prior restraint on expression comes with a heavy presumption against its constitutional validity." Id. at 242 (quotation, brackets, and ellipsis omitted).

The trial court acknowledged, and no party disputes, that the third part of the order constitutes a prior restraint. We must determine whether this restraint is constitutional. The order was triggered based upon the putative content of any future case or pleading that Cole may file against DCYF or CASA. See Petition of Brooks, 140 N.H. 813, 819 (1996). "A content-based prohibition on speech concerning matters of public interest must be subjected to the most exacting scrutiny." Id. (quotation omitted). "To survive such scrutiny, the prohibition must serve a compelling State interest and be narrowly tailored to accomplish that interest." Id. at 819-20 (quotation omitted); see also United States v. Playboy Entertainment Group, Inc., 529 U.S. 803, 813 (2000) (stating that statute that regulated speech based upon content could "stand only if it satisfie[d] strict scrutiny" and "must be narrowly tailored to promote a compelling Government interest").

Similarly, we have held that when public access to sealed court documents is sought,

> Part I, Articles 8 and 22 of the State Constitution require: (1) that the party opposing disclosure of the document demonstrate that there is a sufficiently compelling reason that would justify preventing public access to that document; and (2) that the court determine that no reasonable alternative to nondisclosure exists and use the least restrictive means available to accomplish the purposes sought to be achieved.

Associated Press v. State of N.H., 153 N.H. 120, 130 (2005) (quotations omitted); see also In re Brianna B., 785 A.2d 1189, 1193 (Conn. App. Ct. 2001) ("To justify [a nondisclosure] order . . . , the state must establish a compelling

5

interest for the order and narrowly tailor the order to reach that end."). "[T]he burden of proof rests with the party seeking closure or nondisclosure of court records to demonstrate with specificity that there is some overriding consideration or special circumstance, that is, a sufficiently compelling interest, which outweighs the public's right of access to those records." Petition of Keene Sentinel, 136 N.H. at 128; see also New York Times Co. v. United States, 403 U.S. 713, 714 (1971) ("The Government thus carries a heavy burden of showing justification for the imposition of [a prior] restraint." (quotation omitted)).

Assuming that the asserted interests of DCYF and CASA in guarding the identities and privacy of the children and facilitating the reporting and adjudication involved in such proceedings are compelling, we must determine whether the court's order — that any future suit be confidential and any pleadings filed under seal — is "narrowly tailored" to serve those interests, Petition of Brooks, 140 N.H. at 819-20, and uses "the least restrictive means available to accomplish the purposes sought to be achieved," Associated Press, 153 N.H. at 130 (quotation omitted).

The Child Protection Act, which governs child abuse and neglect proceedings, provides, "The court records of proceedings under this chapter shall be kept in books and files separate from all other court records. Such records shall be withheld from public inspection but shall be open to inspection by the parties, child, parent, grandparent . . . , guardian, custodian, attorney, or other authorized representative of the child." RSA 169-C:25, I(a). Additionally, "The general public shall be excluded from any hearing under this chapter and . . . [o]nly such persons as the parties, their witnesses, counsel and representatives of the agencies present to perform their official duties shall be admitted, except that other persons invited by a party may attend, with the court's prior approval." RSA 169-C:14 (2014). "It shall be unlawful for any person present during a child abuse or neglect hearing to disclose any information concerning the hearing that may identify a child or parent who is involved in the hearing without the prior permission of the court." RSA 169-C:25, II (2014). "Any person who knowingly violates this provision shall be guilty of a misdemeanor." Id.

Consistent with the statute, the trial court ordered that Cole not publicly disclose the court records of the abuse and neglect proceedings. Cole does not appeal that part of the order. The trial court went further, however, and ordered that any future lawsuit, or the pleadings therein, filed by Cole against DCYF and CASA must, at least at the outset, be filed under seal and treated as confidential.[1] We note that the third part of the court's order is not limited to

---

[1] The order stated that after the case is filed in superior court, that court can apply the framework of Petition of Keene Sentinel to determine whether the records shall remain under seal. See Petition of Keene Sentinel, 136 N.H. at 130-31.

6

sealing those portions of potential pleadings that derive solely or exclusively from the records of the abuse and neglect case, which are covered by the second part of its order. Rather, by its terms, this restriction requires the sealing of any and all pleadings in the lawsuit contemplated by Cole, whether their content is based upon court records of the abuse and neglect case or derives from other sources. We hold that this part of the order is overbroad; it is not narrowly tailored, nor does it use the least restrictive means to accomplish its purpose.

There is no valid reason to issue such a blanket order for any and all future pleadings or suits. The second part of the order, preventing Cole from publicly disclosing information from the court records, which is consistent with RSA 169-C:25 (2014), adequately serves the confidentiality interests identified by DCYF and CASA. There is no justification for additionally requiring that allegations that may be contained in Cole's lawsuit but are not based upon information gleaned from the abuse and neglect case should be shielded from the public.[2] See Petition of Brooks, 140 N.H. at 821 (holding that rules requiring nondisclosure in the attorney discipline context "prohibited more speech than was necessary by preventing disclosure of well-founded complaints as well, and accordingly were overbroad"). DCYF and CASA contend that the order is narrowly tailored because it is limited in duration inasmuch as the court in which any pleadings are filed may decide to unseal them. We conclude, however, that even if the pleadings are eventually opened to the public, ordering Cole to seal any and all pleadings at the time that she files them is unconstitutionally overbroad.

The order also does not use the least restrictive means available. There are many ways that the State's interests in privacy and in protecting the identities of the children and others involved in the case could be served short of ordering that any pleading be filed under seal or that an entire case be filed as confidential. For example, documents could be redacted, or initials or pseudonyms could be used.

Because we agree with Cole that this part of the order constitutes an unconstitutional prior restraint, we need not address her arguments that it unlawfully shifts the burden to her to show that disclosure is warranted, or that it unfairly allows others to disclose the same information that she is prohibited from disclosing. Further, because we hold that this part of the order

---

[2] We note that there were criminal proceedings against the biological parents and those proceedings were not confidential. Although the children's names were not disclosed, many other details were, and the crime received significant media attention. These proceedings, as well as the media reports, could well be one of the bases for the allegations in the lawsuit. Cf. Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 495 (1975) ("By placing the information in the public domain on official court records, the State must be presumed to have concluded that the public interest was thereby being served. . . . States may not impose sanctions on the publication of truthful information contained in official court records open to public inspection.").

violates the State Constitution, we need not decide the issue under the Federal Constitution.  See Ball, 124 N.H. at 237.

DCYF and CASA argue that the third part of the order should be left in place to maintain the "status quo" of confidentiality provided for by RSA 169-C:25.  They express concern that applying the Keene Sentinel framework only after pleadings have been filed would render the State's interests moot "by disclos[ing] before the court decides whether to unseal the document." Associated Press, 153 N.H. at 137.  Although we reverse the third part of the trial court's order, the second part — requiring that Cole not reveal any information obtained from the court records — remains in place.  Cole did not challenge this part of the order, so the question of its propriety is not before us.[3]  Because it remains in place, if Cole files a future lawsuit, any portions of the pleadings therein that derive from court records of the abuse and neglect case must be submitted under seal.  If she does not comply, there are potential repercussions, both under the statute itself, RSA 169-C:25, II, and by virtue of violating the court order.  Therefore, the confidentiality required by RSA 169-C:25 remains protected.

Reversed.

DALIANIS, C.J., and HICKS, CONBOY, and BASSETT, JJ., concurred.

---

[3] Given that Cole does not challenge the part of the trial court's order that prohibits her from publicly disclosing the records from the abuse and neglect proceedings, we have no occasion to consider whether the confidentiality provisions of RSA 169-C:25 can be waived by a fit parent who determines that it is in the best interest of his or her child to do so to further some legitimate interest (such as holding those claimed to be responsible for the abuse or neglect of the child publicly or legally accountable for their conduct).  Cf. Troxel, 530 U.S. at 68-69 ("[S]o long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State . . . to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children.").