Merrimack
No. 2004-830

THE ASSOCIATED PRESS & a.

v.

THE STATE OF NEW HAMPSHIRE

Argued: October 20, 2005
Opinion Issued: December 30, 2005

*Orr & Reno, P.A.*, of Concord (*William L. Chapman* on the brief and orally), for the petitioners.

*Kelly A. Ayotte*, attorney general (*M. Kristin Spath*, associate attorney general, on the brief, and *Mary E. Schwarzer*, assistant attorney general, orally), for the State.

*Douglas, Leonard & Garvey, P.C.*, of Concord (*Charles G. Douglas, III* on the brief), for Neal Kurk, as *amicus curiae*.

DUGGAN, J. The petitioners, the Associated Press and other news organizations serving New Hampshire, appeal the order of the Superior Court (*Fitzgerald*, J.) denying their petition for a declaration that RSA 458:15-b (2004) (amended 2005) is unconstitutional and for an injunction enjoining its enforcement. We affirm in part, reverse in part and remand.

*I. Background*

The record supports the following facts. RSA 458:15-b was introduced during the 2003 New Hampshire legislative session as House Bill 384. It

was enacted on June 11, 2004, and took effect on August 10, 2004. The statute provides:

I. Except as provided in paragraph III, all financial affidavits filed under this chapter shall be confidential and accessible only to the parties, their attorneys, the guardian ad litem, department of health and human services employees responsible for child support administration, and state and federal officials for the purpose of carrying out their official functions.

II. Any person who knowingly discloses a financial affidavit to any person not authorized to obtain the financial affidavit under this section shall be guilty of a misdemeanor. This paragraph shall not apply to documents released by a court pursuant to paragraph III.

III. Notwithstanding paragraph I, the court may grant access to a financial affidavit filed under this chapter to a person upon a showing by clear and convincing evidence that the public interest served by release of the information outweighs the private interest served by maintaining the privacy of the financial affidavit. For the purposes of this paragraph, the right of the public to access court records shall not, absent further cause, constitute sufficient evidence to overcome the presumption of privacy contained in paragraph I.

RSA 458:15-b.

On August 9, 2004, the petitioners filed a petition for declaratory and injunctive relief in the superior court, requesting the court to rule that RSA 458:15-b is unconstitutional because: (1) it violates the public's right of access to court records guaranteed by Part I, Articles 8 and 22 of the State Constitution; (2) it is an impermissible prior restraint on freedom of speech as guaranteed by Part I, Article 22 of the State Constitution and the First Amendment to the Federal Constitution; and (3) it violates the separation of powers guaranteed by Part I, Article 37 of the State Constitution.

The trial court ruled that RSA 458:15-b is constitutional, and denied the petitioners' request for relief. With respect to the public's constitutional right of access to court records, the trial court said that the constitutionality of RSA 458:15-b depends only upon whether the statute serves a compelling State interest. The trial court then found that RSA 458:15-b advances the fundamental right to privacy, and "the preservation of this particular privacy interest in certain information is a compelling interest." The trial court also concluded that RSA 458:15-b does not violate

the separation of powers, finding that the inclusion of a judicial review mechanism in the statute, as well as the existence of other similar statutes making court records confidential, indicates that the legislature has not impermissibly intruded upon the judicial function. Finally, the trial court concluded that, although RSA 458:15-b operates as a prior restraint on freedom of speech, the judicial review procedures in the statute are sufficient to render RSA 458:15-b constitutional.

On appeal, the petitioners ask us to hold that RSA 458:15-b is unconstitutional. "The constitutionality of a statute involves a question of law, which we review *de novo*." *Hughes v. N.H. Div. of Aeronautics*, 152 N.H. 30, 34 (2005). To address the petitioners' claims, we first must decide whether RSA 458:15-b violates the public right of access to court records provided by the State Constitution. In doing so, we review: the State constitutional right of access to court records, *see* N.H. CONST. pt. I, arts. 8, 22; the constitutional standards applicable to limitations on the right of access to court records, *see Petition of Keene Sentinel*, 136 N.H. 121, 129-30 (1992); and the applicability of those standards to RSA 458:15-b. We then must determine whether RSA 458:15-b is an impermissible prior restraint. Finally, we must decide whether RSA 458:15-b violates the separation of powers guaranteed by Part I, Article 37 of the State Constitution.

## II. The Constitutional Right of Access to Court Records

Court records are governmental records, access to which is governed by the State Constitution. *See* N.H. CONST. pt. I, art. 8. Part I, Article 8 of the State Constitution provides:

> All power residing originally in, and being derived from, the people, all the magistrates and officers of government are their substitutes and agents, and at all times accountable to them. Government, therefore, should be open, accessible, accountable and responsive. To that end, the public's right of access to governmental proceedings and records shall not be unreasonably restricted.

N.H. CONST. pt. 1, art. 8. The State argues that RSA 458:15-b does not violate Part I, Article 8 because it "reasonably restricts" public access to government records. In order to determine whether RSA 458:15-b is a reasonable restriction under Part I, Article 8, we must examine the history and purpose of the provision. *See Baines v. N.H. Senate President*, 152 N.H. 124, 133-34 (2005).

Part I, Article 8 must be read in conjunction with Part I, Article 7 of the State Constitution, which states in pertinent part that "[t]he people of this

state have the sole and exclusive right of governing themselves as a free, sovereign, and independent state." N.H. CONST. pt. 1, art. 7; *see Opinion of the Justices*, 111 N.H. 175, 177 (1971). Together, these two provisions "express the American theory of government that the state being sovereign, the people being the state, and all magistrates and public officers being their substitutes and agents[,] they are accountable to the people." *Opinion of the Justices*, 111 N.H. at 177 (quotations omitted).

The last two sentences of Part I, Article 8 were added by amendment in 1976. *Hughes v. Speaker, N.H. House of Representatives*, 152 N.H. 276, 286 (2005). Prior to the 1976 amendment, Part I, Article 8 called for the accountability of government, but did not require any special method of accountability. *Id.* at 289-90; *see also Opinion of the Justices*, 111 N.H. at 177-78. The 1976 amendment incorporated an express right of access into the State Constitution as a method of ensuring, among other things, the accountability of government. *See* N.H. CONST. pt. I, art. 8. "[T]he public's constitutional right of access is meant to satisfy an 'end'; to wit, that government should be open, accountable, accessible and responsive." *Hughes*, 152 N.H. at 295 (quotation omitted). The reasonableness of any restriction on the public's right of access to any governmental proceeding or record must be examined in light of the ability of the public to hold government accountable absent such access.

Unlike some government proceedings and records, *see id.*, most court records and proceedings have historically been open to the public and, as discussed below, the importance of that openness has been recognized time and time again by this court and others. The 1976 amendment to Part I, Article 8 was adopted to further this tradition of open court proceedings and records, consistent with the purpose of assuring, among other things, the accountability of the judiciary. Therefore, the reasonableness of a restriction on access to court proceedings and records must be examined in light of this purpose and the common law and constitutional origins of the right.

██ The public right of access to court proceedings and records pre-dates the State and Federal Constitutions and is firmly grounded in the common law. *See Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1177 & n.6 (6th Cir. 1983). The common law right of access to court records provides that, "absent special circumstances, those things which are filed in court in connection with a pending case are open to public inspection." *Thomson v. Cash*, 117 N.H. 653, 654 (1977). "This appears to be the almost universal rule dating from the earliest times." *Id.*; *accord Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 998 F.2d 157, 161 (3d Cir. 1993). "The courts of New Hampshire have always considered their records to be

public, absent some overriding consideration or special circumstance." *Thomson*, 117 N.H. at 654. The United States Supreme Court has also recognized the existence of a general common law right to access public records and documents, including judicial records. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597-99 (1978). Both the State and Federal Constitutions were adopted against this common law background.

■ The federal courts have recognized that a constitutional right of access to court proceedings and records is implicit in First Amendment guarantees. *See, e.g., Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 (1980) (plurality opinion); *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988); *Publicker Industries, Inc. v. Cohen*, 733 F.2d 1059, 1070 (3d Cir. 1984). In *Richmond Newspapers*, 448 U.S. at 580, the United States Supreme Court first recognized a constitutional right of access to criminal trials. The Court described, in detail, the historical significance of the open court, in both early England and colonial America, *id.* at 564-69, and concluded that the right of access to trials was guaranteed by the First Amendment: ·

> The Bill of Rights was enacted against the backdrop of the long history of trials being presumptively open. Public access to trials was then regarded as an important aspect of the process itself; the conduct of trials "before as many of the people as chuse to attend" was regarded as one of "the inestimable advantages of a free English constitution of government." In guaranteeing freedoms such as those of speech and press, the First Amendment can be read as protecting the right of everyone to attend trials so as to give meaning to those explicit guarantees. "[T]he First Amendment goes beyond protection of the press and the self-expression of individuals to prohibit government from limiting the stock of information from which members of the public may draw." Free speech carries with it some freedom to listen. . . . [I]n the context of trials[,] the First Amendment guarantees of speech and press, standing alone, prohibit government from summarily closing courtroom doors which had long been open to the public at the time that Amendment was adopted.

*Id.* at 575-76 (citations omitted).

In *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606 (1982), the Court reaffirmed the constitutional right of access to criminal trials, explaining:

[T]he right of access to criminal trials plays a particularly significant role in the functioning of the judicial process and the government as a whole. Public scrutiny of a criminal trial enhances the quality and safeguards the integrity of the factfinding process, with benefits to both the defendant and to society as a whole. Moreover, public access to the criminal trial fosters an appearance of fairness, thereby heightening public respect for the judicial process. And in the broadest terms, public access to criminal trials permits the public to participate in and serve as a check upon the judicial process—an essential component in our structure of self-government. In sum, the institutional value of the open criminal trial is recognized in both logic and experience.

The United States Supreme Court has since applied the First Amendment right of access to *voir dire* in criminal cases, *Press-Enterprise Co. v. Superior Court of Cal.*, 464 U.S. 501, 508-10 (1984) (hereinafter *Press-Enterprise I*), and preliminary hearings in criminal cases, *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 10 (1986) (hereinafter *Press-Enterprise II*).

Although the United States Supreme Court has yet to apply the First Amendment right of access to civil proceedings, other federal courts have done so. *See, e.g., Publicker*, 733 F.2d at 1070 (3d Cir. 1984). The significance of the right of public access to civil proceedings, like that to criminal trials, rests in the accountability of the judiciary:

The explanation for and the importance of [the] public right of access to civil trials is that it is inherent in the nature of our democratic form of government.... "It is desirable that the trial of [civil] causes should take place under the public eye, ... not because the controversies of one citizen with another are of public concern, but because it is of the highest moment that those who administer justice should always act under the sense of public responsibility, and that every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed."

*Id.* at 1069 (citations omitted) (quoting *Cowley v. Pulsifer*, 137 Mass. 392, 394 (1884)).

Although few courts have addressed whether the First Amendment right of access applies to court records, one federal court has said that principles regarding public access to judicial proceedings apply as well to public access to court documents because "court records often provide

important, sometimes the only, bases or explanations for a court's decision." *Brown & Williamson,* 710 F.2d at 1177; *see also Rushford,* 846 F.2d at 252-53 (applying First Amendment right of access to pleadings and exhibits, including products of discovery, filed in connection with motions for summary judgment).

Unlike the federal right of access under the First Amendment, the State constitutional right of access to court proceedings and records is explicitly provided by Part I, Article 8 of the State Constitution. New Hampshire is one of only a handful of States with a constitutional provision that explicitly protects the public's right of access to governmental proceedings and documents. *Hughes,* 152 N.H. at 289. The explicit incorporation of the right of access to governmental *documents* into the State Constitution provides greater textual support to the constitutional right of access to court records than does the First Amendment.

■ Furthermore, just as the federal courts have recognized that the right of access to court proceedings and records is grounded in the First Amendment freedom of speech, we, too, have recognized that the public's right of access to court records and proceedings is grounded in Part I, Article 22 of the State Constitution. *See Petition of Keene Sentinel,* 136 N.H. at 127. Part I, Article 22 provides: "Free speech and liberty of the press are essential to the security of freedom in a state: They ought, therefore, to be inviolably preserved." N.H. CONST. pt. I, art. 22. Thus, the State constitutional right of access arises from both Part I, Article 8 and Part I, Article 22.

In a long line of cases discussing access to court proceedings and court records, we have relied upon Articles 8 and 22, together, as the basis for the State constitutional right of access. In *Keene Publishing Corp. v. Keene District Court,* 117 N.H. 959, 961-62 (1977), we held that the trial court could not order the closing of a probable cause hearing to protect the defendant from pre-trial publicity. In doing so, we recognized that "[i]n this state the press has been held to have a right, though not unlimited, to gather news so as to effectuate the policy of our constitution that a free press is 'essential to the security of freedom in a state.'" *Id.* at 961 (quoting N.H. CONST. pt. I, art. 22). Then, in *Petition of Keene Sentinel,* 136 N.H. at 128, we held that the trial court, when faced with a petition for access from the press or other members of the public, could not refuse to disclose documents filed in a divorce proceeding absent a specific showing by the party seeking to prevent access that would compel nondisclosure. We recognized that the constitutional and decisional law of this State regarding Articles 8 and 22 established a presumption that court records are public. *Id.* at 126, 127, 128.

Since *Petition of Keene Sentinel,* we have recognized that "the New Hampshire Constitution creates a public right of access to court records." *Bowman Search Warrants,* 146 N.H. at 625; *accord Petition of Union Leader Corp.,* 147 N.H. 603, 604 (2002). "The right to open courtrooms and access to court records related to court proceedings is firmly supported by New Hampshire practice and common law principles, Part I, Articles 8 and 22 of our State Constitution and our guidelines for public access." *Petition of Union Leader Corp.,* 147 N.H. at 604. "Such access is critical to ensure that court proceedings are conducted fairly and impartially, *see Globe Newspaper*[, 457 U.S. at 606]; *Leucadia*[, 998 F.2d at 161], and that the judicial process is open and accountable. *See* N.H. CONST. pt. I, arts. 8, 22." *Petition of Union Leader Corp.,* 147 N.H. at 604.

*III. Limitations on the Constitutional Right of Access to Court Records*

The constitutional right of access to judicial proceedings and records, under either the State or Federal Constitution, is not absolute. *Globe Newspaper,* 457 U.S. at 606; *Bowman Search Warrants,* 146 N.H. at 625; *see also Petition of Keene Sentinel,* 136 N.H. at 129-30.

In New Hampshire, the right of access may be overcome when a sufficiently compelling interest for nondisclosure is identified. *Bowman Search Warrants,* 146 N.H. at 625. We have repeatedly held that

> under the constitutional and decisional law of this State, there is a *presumption* that court records are public and the burden of proof rests with the party seeking closure or nondisclosure of court records to demonstrate with specificity that there is some overriding consideration or special circumstance, that is, a sufficiently compelling interest, which outweighs the public's right of access to those records.

*Douglas v. Douglas,* 146 N.H. 205, 208 (2001) (emphasis added) (quotation omitted); *accord Petition of Union Leader Corp.,* 147 N.H. at 604; *Petition of Keene Sentinel,* 136 N.H. at 128. Thus, there is a rebuttable presumption of openness that is inherent in the constitutional right of access and the burden is always on the party seeking to rebut that presumption. *See Petition of Keene Sentinel,* 136 N.H. at 126-27, 128; *cf. Dreiling v. Jain,* 93 P.3d 861, 866-67 (Wash. 2004) (under Washington state constitution, "[o]penness is presumptive ... [and t]he burden of persuading the court that access must be restricted to prevent a threat to an important interest is generally on the proponent" of nondisclosure). The motivations of the party seeking disclosure are irrelevant to the question of access. *Petition of Keene Sentinel,* 136 N.H. at 128. Furthermore, even

where a sufficiently compelling interest is demonstrated, a court record may not be kept sealed unless "no reasonable alternative to nondisclosure exists" and the "least restrictive means available" is utilized to serve the interest that compels nondisclosure. *Id.* at 130.

This standard is analogous to the standard employed by the federal courts in analyzing the public right of access to court proceedings and records under the First Amendment.

> Closed proceedings, although not absolutely precluded, must be rare and only for cause shown that outweighs the value of openness. . . . Where the State attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest.

*Press-Enterprise I*, 464 U.S. at 509-10 (citation and quotation omitted). "[T]o limit the public's access to civil trials there must be a showing that the denial serves an important governmental interest and that there is no less restrictive way to serve that governmental interest." *Publicker*, 733 F.2d at 1070.

We now reaffirm the clear command of Part I, Article 8 of the State Constitution, which requires that the public's constitutional right of access to court records not be unreasonably restricted. In keeping with our prior cases, we hold that, whenever a member of the public, including the press, seeks access to a sealed court document, Part I, Articles 8 and 22 of the State Constitution require: (1) that the party opposing disclosure of the document demonstrate that "there is a sufficiently compelling reason that would justify preventing public access to that document"; and (2) that the court "determine that no reasonable alternative to nondisclosure exists" and "use the least restrictive means available to accomplish the purposes sought to be achieved." *Petition of Keene Sentinel*, 136 N.H. at 129-30.

*IV. RSA 458:15-b and the Constitutional Right of Access to Court Records*

In analyzing whether RSA 458:15-b violates the State constitutional right of access to court records, we first consider whether the constitutional right of access attaches to domestic relations proceedings and financial affidavits in general. Finding that it does, we then consider whether RSA 458:15-b offends that constitutional right of access, in either its requirement that all financial affidavits be filed under seal or its procedural requirements for public access.

*A. Applicability of the Constitutional Right of Access to Divorce Proceedings and Financial Affidavits*

As explained above, the public right of access to judicial proceedings and records arises from a history of open court proceedings and the need to maintain the integrity and accountability of the judiciary. However, as discussed below, not every type of court proceedings has historically been open to the public; nor does public access enhance the integrity or accountability of the judiciary in every situation. Inherent in the policies underlying public access is the fact that the right of access does not attach to every proceeding or to every record.

Whether the right of access attaches to all financial affidavits filed in domestic relations cases has yet to be decided in this State. In *Petition of Keene Sentinel*, 136 N.H. at 127-28, the parties seeking nondisclosure of their divorce records argued that the constitutional right of access does not apply to civil proceedings, but made no argument specifically regarding the applicability of the constitutional right of access to divorce proceedings or financial affidavits. We held only that the constitutional right of access to court records applied to civil proceedings just as it does to criminal proceedings. *Id.* In *Douglas*, 146 N.H. at 206, the party seeking nondisclosure of a sealed financial affidavit argued that a superior court rule barred disclosure of such a document, but made no argument as to the applicability of the constitutional right of access to the documents at issue in that case. We held only that the court rule did not bar access, and that the standard articulated in *Petition of Keene Sentinel*, 136 N.H. at 128-30, was applicable to a petition for access to sealed court records. *Douglas*, 146 N.H. at 207-08.

In determining whether the First Amendment right of access applies to proceedings outside of the criminal trial, the United States Supreme Court has utilized a two-part test of experience and logic—"whether the place and process have historically been open to the press and general public" and "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise II*, 478 U.S. at 8. If the proceeding in question meets both considerations, then the First Amendment right of access attaches. *Id.* at 9. Utilizing the experience and logic test, the United States Supreme Court has applied the constitutional right of access to *voir dire* in criminal cases, *see Press-Enterprise I*, 464 U.S. at 508-10, and certain preliminary hearings in criminal cases, *Press-Enterprise II*, 478 U.S. at 10. *Cf. id.* at 8-9 (noting that grand jury proceedings would likely fail the logic prong of the test, because the operation of the grand jury system would be frustrated if conducted openly).

"The historical support for access to criminal trials applies in equal measure to civil trials." *Brown & Williamson*, 710 F.2d at 1178; *see also Publicker*, 733 F.2d at 1068-70; *Matter of Continental Illinois Securities Litigation*, 732 F.2d 1302, 1308 (7th Cir. 1984). As such, other courts have followed the Supreme Court's experience and logic test and applied the federal constitutional right of access to civil trials and certain civil proceedings. *See, e.g., Rushford*, 846 F.2d at 252-53 (motions for summary judgment); *Westmoreland v. Columbia Broadcasting System, Inc.*, 752 F.2d 16, 23 (2d Cir. 1984) (civil proceedings); *Publicker*, 733 F.2d at 1070 (civil trials); *In re Iowa Freedom of Information Council*, 724 F.2d 658, 661 (8th Cir. 1983) (civil trials and proceedings for contempt); *Newman v. Graddick*, 696 F.2d 796, 801-02 (11th Cir. 1983) (civil trials pertaining to the release or incarceration of prisoners and the conditions of their confinement, as well as proceedings relating thereto); *NBC Subsidiary (KNBC-TV) v. Superior Court*, 980 P.2d 337, 361 (Cal. 1999) (civil trials and proceedings); *cf. North Jersey Media Group, Inc. v. Ashcroft*, 308 F.3d 198, 204-05, 211-15 (3d Cir. 2002) (First Amendment right does not attach to deportation proceedings because such proceedings not historically open); *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 11-12 (1st Cir. 1986) (civil discovery motions not subject to constitutional right of access because discovery proceedings not historically open and public access may burden the discovery process); *Natural Parents of J.B. v. Florida DCFS*, 780 So. 2d 6, 9-11 (Fla. 2001) (First Amendment constitutional right of access does not attach to juvenile proceedings because such proceedings not historically open).

We have never expressly adopted the United States Supreme Court's experience and logic test under the State Constitution. However, we have followed a similar paradigm in determining when the State constitutional right of access attaches to certain court proceedings and court documents. *See Petition of Union Leader Corp.*, 147 N.H. at 604-06; *Bowman Search Warrants*, 146 N.H. at 625-29. In *Bowman Search Warrants*, 146 N.H. at 625-29, we held that there is generally no constitutional right of access to search warrants and related documents during the pre-indictment stage of an on-going criminal investigation because, among other things, search warrant procedures have not historically been open to the public and public access would hinder the warrant process and the ongoing criminal investigation. In *Petition of Union Leader Corp.*, 147 N.H. at 604-06, we held that there is no constitutional right of access to agendas and minutes of superior court judges' meetings. In both cases, we examined whether the process or documents at issue had historically been open to the public and whether public access played a positive or negative role in the functioning of the process in question.

■ Given that we have considered the applicability of the State constitutional right of access in a paradigm similar to that used by the federal courts, we now adopt the United States Supreme Court's experience and logic test for determining whether the State constitutional right of access applies to certain court proceedings. We note that, under the experience and logic test, there may well be certain types of civil proceedings to which the constitutional right of access will not attach; domestic relations proceedings, however, are not one of them. Domestic relations proceedings are a type of civil proceeding that has historically been open to the press and general public. *See* 24 AM. JUR. 2D *Divorce and Separation* § 313 (1998) ("Public access to courtroom proceedings is strongly favored, even in matrimonial cases. . . . Parties seeking a dissolution of their marriage are not entitled to a private court proceeding."); *see also Petition of Keene Sentinel*, 136 N.H. at 128; *Barron v. Florida Freedom Newspapers*, 531 So. 2d 113, 119 (Fla. 1988). In addition, public access plays a significant role in the functioning of the court in domestic relations proceedings by "enhanc[ing] the quality and safeguard[ing] the integrity of the factfinding process . . . [and] foster[ing] an appearance of fairness, thereby heightening public respect for" domestic relations proceedings. *Globe Newspaper*, 457 U.S. at 606. The importance of matters regarding children and families only heightens the need for openness and public accountability in domestic relations proceedings. Therefore, just as the State constitutional right of access applies to civil proceedings, so too does it apply to domestic relations proceedings under the experience and logic test.

■ Even where the constitutional right of access is applicable to a court proceeding, the right of access is not automatically applicable to every court document relating to that proceeding. With respect to the common law right of access, we have held that it applies to "those things which are filed in court in connection with a pending case." *Thomson*, 117 N.H. at 654. However, we do not think that the State constitutional right of access is as expansive. *Cf. Stone v. University of Md. Medical System Corp.*, 855 F.2d 178, 180 (4th Cir. 1988) (common law right of access applies to all judicial records and documents, but First Amendment right of access has been applied only to particular judicial records and documents).

Some federal courts have stated that documents filed with the court are subject to the First Amendment right of access only if the documents are important and relevant to an adjudication of substantive rights. *See Rushford*, 846 F.2d at 252-53 (discovery documents submitted as attachments to a summary judgment motion were subject to constitutional right of access "[b]ecause summary judgment adjudicates substantive

rights and serves as a substitute for a trial"); *Matter of Continental Illinois Securities Litigation*, 732 F.2d at 1304, 1309 (presumption of access applied to special litigation committee report introduced by corporation in connection with its motion to terminate derivative claims because district court relied on the report in making its decision to dismiss some claims); *Brown & Williamson*, 710 F.2d at 1177 (principles regarding public access to judicial proceedings apply as well to public access to court documents because "court records often provide important, sometimes the only, bases or explanations for a court's decision"); *Rufer v. Abbott Laboratories*, 114 P.3d 1182, 1192 (Wash. 2005) (Washington state constitutional right of access applies to all records filed with the court in anticipation of a court decision, dispositive or not). To require that documents filed with the court be subject to the constitutional right of access only if they are important and relevant to an adjudication by the court in connection with a presumptively open proceeding is consistent with the policies underlying the constitutional right of access—"to ensure that court proceedings are conducted fairly and impartially and that the judicial process is open and accountable." *Petition of Union Leader Corp.*, 147 N.H. at 604 (citations omitted); *accord Globe Newspaper*, 457 U.S. at 606.

We decline to hold that every document filed in connection with a pending case is subject to the State constitutional right of access, and instead hold that the State constitutional right of access attaches only to those documents that are important and relevant to a determination made by the court in its adjudicatory function in connection with a proceeding to which the State constitutional right of access has attached.

Having identified the standard for determining whether the constitutional right of access has attached to a court document, we must now consider whether it applies to financial affidavits. Neither of the parties has argued that the constitutional right of access does not apply to financial affidavits in domestic relations cases. Financial affidavits filed in domestic relations cases are utilized by the court in its adjudicatory function. *See* SUPER. CT. R. 197 (requiring that financial affidavits be filed at hearings "involving financial matters or property, or as may be required by the court"); *see also, e.g., In the Matter of Folley & Folley*, 149 N.H. 393, 394 (2003) (trial court relied upon parties' financial affidavits in calculating child support). Therefore, we conclude that financial affidavits filed in domestic relations cases are subject to the constitutional right of access because they are important and relevant to a determination made by the court in its adjudicatory function in connection with a presumptively open proceeding.

*B. Constitutionality of RSA 458:15-b, I and III*

Having determined that the constitutional right of access is applicable to financial affidavits filed in domestic relations cases, we must examine the constitutionality of the procedural requirements in RSA 458:15-b that: (1) make financial affidavits confidential upon filing, RSA 458:15-b, I; and (2) establish procedures for members of the public to gain access to those financial affidavits, RSA 458:15-b, III. We address each section of the statute in turn.

*1. RSA 458:15-b, I*

The constitutionality of a statute that automatically seals a class of court records is an issue of first impression for this court. To date, each of our cases has reviewed the constitutionality of a judicial mandate of disclosure or nondisclosure on the facts of a particular case. *See, e.g., Bowman Search Warrants,* 146 N.H. at 622-30; *Douglas,* 146 N.H. at 208; *Petition of Keene Sentinel,* 136 N.H. at 126-31.

 With the exception of the separation of powers issue raised by the petitioners and addressed later in this opinion, *infra* Part VII, we find nothing in the State Constitution or in our prior cases that prohibits the legislature from enacting legislation that, with sufficient justification, creates a procedure by which a narrow category of documents is made confidential upon filing with the court. In our prior cases dealing with the State constitutional right of access, rather than examining the statute or procedure by which the proceeding or document was made confidential, we instead examined the procedure that was employed when a member of the public sought disclosure of a confidential proceeding or document. *See, e.g., Bowman Search Warrants,* 146 N.H. at 622-30; *Douglas,* 146 N.H. at 208; *Petition of Keene Sentinel,* 136 N.H. at 126-31. To that end, we have stated that "it is not the invocation of the administrative procedures of [a rule or statute] that guides disclosure," but rather the procedures and standards that the State Constitution requires to be used "when a member of the public or the media seeks access to sealed court records." *Douglas,* 146 N.H. at 207-08 (quotation omitted). Although certain court records to which the constitutional right of access attaches may initially be made confidential, the records always retain their status as presumptively open; when a member of the public seeks access, the presumption in favor of disclosure must still be rebutted by the party seeking to maintain closure. Therefore, we conclude that the automatic confidentiality provision in RSA 458:15-b, I, is a reasonable restriction on the public's right of access to court records, and is thus constitutional, so long as the financial affidavits

retain their status as presumptively open and the public is afforded procedural safeguards required by the constitutional right of access.

### 2. RSA 458:15-b, III

We now examine the constitutionality of the procedures for public access provided in RSA 458:15-b, III. As stated above, whenever a member of the public, including the press, seeks access to a document sealed under RSA 458:15-b, I, Part I, Articles 8 and 22 of the State Constitution require: (1) that the party opposing disclosure of the document demonstrate that there is a sufficiently compelling reason that would justify preventing public access to that document; and (2) that the court determine that no reasonable alternative to nondisclosure exists and use the least restrictive means available to accomplish the purposes sought to be achieved. *See Petition of Keene Sentinel*, 136 N.H. at 129-30.

At the outset, the State argues that the *Petition of Keene Sentinel* analysis does not apply to legislative enactments designed to further some countervailing interest that the legislature has deemed to be sufficiently compelling to require nondisclosure in all cases. The State relies upon the trial court's interpretation of *Petition of Keene Sentinel*. In its order, the trial court stated:

> The Court in *Keene Sentinel* realized ... that in certain circumstances, statutory provisions would grant or require confidentiality, *constituting a sufficiently compelling interest to preclude public access* to the document at issue. *See [Petition of Keene Sentinel*, 136 N.H.] at 130.

> By enacting RSA 458:15-b, the legislature provided that the individual privacy interest at stake in financial affidavits in domestic relations cases is so great that it constitutes a *per se* countervailing interest in the *Keene Sentinel* analysis.

(Emphasis added.) We respectfully disagree. The trial court appears to have relied upon our discussion in *Petition of Keene Sentinel*, 136 N.H. at 130, of the procedures that the trial court must follow in conducting an *in camera* hearing on a petition for access to a sealed record in the presence of counsel for the parties and the petitioner. We stated:

> There will be instances where the claimed countervailing rights of a party (for example, constitutional rights of a defendant in a criminal case or statutory provisions granting or requiring confidentiality in certain cases) *must not be rendered moot pending final resolution of the access issue*. When appropriate, the document's subject matter, however, can be described in

general terms such that persons objecting to closure can present an adequate argument to the court.

*Id.* (emphasis added). In this statement, we provided a safeguard to preserve the *status quo* during *in camera* proceedings, recognizing that the proponent of nondisclosure may have certain "countervailing rights," statutory or otherwise, that must not be "rendered moot" by disclosure before the court decides whether to unseal the document. *Id.* However, we did not state that these countervailing rights automatically rise to the level of a "sufficiently compelling interest to preclude public access."

The State next argues that RSA 458:15-b, including the procedures contained in paragraph III, is justified by a compelling State interest: the individual's fundamental right to privacy. However, a generalized concern for personal privacy is insufficient to meet the State's burden of demonstrating the existence of a sufficiently compelling reason to prevent public access. *See id.* at 128. "We cannot accept . . . a blanket assertion of the privacy right. Courts . . . are public forums. A private citizen seeking a divorce in this State must unavoidably do so in a public forum . . . ." *Id.* While we recognize the importance of the right to privacy, "[t]he [public's] right of access to . . . sealed records must be weighed and balanced against privacy interests that are articulated with specificity." *Id.* at 129.

The State also argues that RSA 458:15-b is justified by another compelling State interest: the protection of the citizens of the State from identity theft. We acknowledge that identity theft is a growing problem. However, the State has offered no empirical evidence linking identity theft to court documents, nor has the State demonstrated that the shifting of the burden of proof and the new standard established by RSA 458:15-b will lead to a decrease in the incidence of identity theft in the State.

Even if we agree that RSA 458:15-b serves a compelling interest— safeguarding litigants from identity theft—the State has failed to demonstrate that the nondisclosure procedures created by paragraph III of the statute are a narrowly tailored means of protecting litigants from identity theft. Once financial affidavits are made confidential under RSA 458:15-b, I, they may not be viewed by anyone but the parties and other persons specifically identified in paragraph I, *except* by leave of court. RSA 458:15-b, I. Thus, a member of the press or public must file a petition with the court when seeking access to a sealed affidavit. *See Petition of Keene Sentinel*, 136 N.H. at 125. Only those persons identified in paragraph I may enter the courthouse and request to view a financial affidavit without the affiant receiving knowledge of the request and an opportunity to object. RSA 458:15-b, I; *Petition of Keene Sentinel*, 136 N.H. at 130. We do not see what additional protection from identity theft

the procedures contained in paragraph III provide, and even if those procedures provide some additional protection, that protection does not justify the restrictions placed on the public's constitutional right of access.

The petitioners argue that RSA 458:15-b, III is unconstitutional because it places the burden of proof upon the proponent of disclosure, rather than the proponent of nondisclosure, *see Petition of Keene Sentinel*, 136 N.H. at 130, and it requires the showing of some public interest in favor of disclosure that is greater than the public right of access to court records, *see* RSA 458:15-b, III ("the right of the public to access court records shall not, absent further cause, constitute sufficient evidence" to compel disclosure). We agree.

As stated, Part I, Articles 8 and 22 of the State Constitution require that a party opposing disclosure of a presumptively open court document bear the burden of demonstrating a sufficiently compelling reason that justifies nondisclosure. *See Petition of Keene Sentinel*, 136 N.H. at 130. By contrast, RSA 458:15-b, III places the burden upon the party seeking disclosure. The trial court attempted to minimize the importance of this burden-shifting by interpreting the statute to mean that the burden of demonstrating a sufficiently compelling interest is always met when financial affidavits are filed. However, the constitution requires an individualized determination of a sufficiently compelling interest on the facts of each case. *See Petition of Keene Sentinel*, 136 N.H. at 128; *Globe Newspaper*, 457 U.S. at 607 & n.20. For example, much of the information contained in the financial affidavit may already be revealed in other parts of the record which are open to the public, or may already have been otherwise made public, in which case the fear of identity theft based upon that information might not be a compelling reason in favor of nondisclosure of the financial affidavit. *Cf. Globe Newspaper*, 457 U.S. at 607-09 (finding that the interests served by the statute were compelling, but that "the circumstances of the particular case may affect the significance of the interest"). Because the interest in favor of protecting litigants from identity theft could be served by requiring the proponent of nondisclosure to show whether the risk of identity theft necessitates complete or partial nondisclosure in a given case, it cannot be said that the shifting of the burden in paragraph III is narrowly tailored to serve that interest. *See id.* at 609.

RSA 458:15-b, III also requires that the proponent of disclosure demonstrate some public interest in favor of disclosure that is greater than the public right of access to court records. *See* RSA 458:15-b, III ("the right of the public to access court records shall not, absent further cause, constitute sufficient evidence" to compel disclosure). However, the motivations of the party seeking disclosure are irrelevant to the question

of access. *Petition of Keene Sentinel*, 136 N.H. at 128. Furthermore, the public right of access to court records is a right grounded partially in Part I, Article 8 of the State Constitution—the last two sentences of which were necessary in order to prevent the legislature from "'completely do[ing] away with the right to know.'" *Hughes*, 152 N.H. at 286 (quoting JOURNAL OF CONSTITUTIONAL CONVENTION 176 (1974)). The abrogation of the right of access to court records in paragraph III appears to be just that—an attempt by the legislature to completely do away with the public's right of access to certain court records.

We conclude that RSA 458:15-b, III is unconstitutional for three reasons: it places the burden of proof upon the proponent of disclosure, rather than the proponent of nondisclosure, *see Petition of Keene Sentinel*, 136 N.H. at 130; it abrogates entirely the public right of access to a class of court records, *see* N.H. CONST. pt. I, arts. 8, 22; and it is not narrowly tailored to serve the allegedly compelling interest of the State in protecting its citizens from identity theft, *see Petition of Keene Sentinel*, 136 N.H. at 130. RSA 458:15-b, III does not permit the court to make the individualized determinations required by the State Constitution and by *Petition of Keene Sentinel* and its progeny. *Cf. Allied Daily Newspapers v. Eikenberry*, 848 P.2d 1258, 1262 (Wash. 1993) (statute held to be violative of Washington state constitution's public access requirement because statute did not permit court to make individualized determinations as required by case law). The State's remaining arguments on this issue are without merit and do not warrant further discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

*V. Prior Restraint*

Having concluded that RSA 458:15-b, I, does not violate the constitutional right of access, while RSA 458:15-b, III does, we now consider the constitutionality of RSA 458:15-b, II. Paragraph II makes criminal the disclosure of a financial affidavit "to any person not authorized to obtain the financial affidavit under [paragraph I]," except where the financial affidavit has been released by a court pursuant to paragraph III. RSA 458:15-b, II. The petitioners argue that paragraph II is an impermissible prior restraint on freedom of speech, in violation of Part I, Article 22 of the State Constitution as well as the First Amendment to the Federal Constitution. We first address the petitioners' claim under the State Constitution and cite federal opinions for guidance only. *State v. Ball*, 124 N.H. 226, 231-32, 233 (1983).

The petitioners contend that because RSA 458:15-b, II punishes the publication of lawfully obtained, truthful information it is an impermissible

prior restraint. Although the State concedes that RSA 458:15-b is a prior restraint, we note that the statute "is not in the classic mold of prior restraint, there being no prior injunction against publication." *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97, 101 (1979); *see Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 559 (1976). In considering whether a statute is an impermissible prior restraint under Part I, Article 22 of the State Constitution, we find it helpful to look to the experience of the federal courts in analyzing the same issue under the First Amendment. *Cf. Scarborough v. Arnold*, 117 N.H. 803, 807 (1977).

We agree that the United States Supreme Court has clearly held that the First Amendment provides a certain degree of protection against penal sanctions for the publication of lawfully obtained, truthful information. *See Smith*, 443 U.S. at 101-02; *see also Petition of Brooks*, 140 N.H. 813, 819 (1996). In fact, courts have consistently reversed damage awards and criminal convictions for the publication of lawfully obtained, truthful information by the press. *See, e.g., Florida Star v. B.J.F.*, 491 U.S. 524, 541 (1989); *Smith*, 443 U.S. at 100, 106; *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 834 (1978); *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 496-97 (1975).

However, we do not agree that the Supreme Court has held that such penal sanctions are prior restraints. *See, e.g., Florida Star*, 491 U.S. at 541 & n.9. (concluding that the imposition of liability for the publication of lawfully obtained, truthful information violates the First Amendment, but declining to reach the question of whether it functions as an impermissible prior restraint); *Smith*, 443 U.S. at 101-02 (distinguishing between prior restraints and penal sanctions for publication of lawfully obtained, truthful information); *Landmark Communications, Inc.*, 435 U.S. at 837-38 (criminal prosecution of third parties for the publication of lawfully obtained, truthful information not a prior restraint). Nor have we. *See Brooks*, 140 N.H. at 823 (holding that confidentiality rule failed First Amendment scrutiny, with no mention of the rule constituting a prior restraint).

The petitioners argue that, because RSA 458:15-b, II is a prior restraint, it is permissible only if it contains certain "procedural safeguards designed to obviate the dangers of a censorship system." *Freedman v. Maryland*, 380 U.S. 51, 58 (1965). However, having failed to meet their threshold burden of demonstrating that RSA 458:15-b, II is a prior restraint, the petitioners cannot succeed in challenging the constitutionality of paragraph II on the grounds that it is a procedurally inadequate prior restraint.

■ Furthermore, even if RSA 458:15-b, II may violate freedom of speech under the First Amendment or under Article 22 in certain cases by punishing the publication of lawfully obtained, truthful information, no such punishment is before us today. Unlike the cases cited by the petitioners, here the State has not attempted to prosecute anyone for a violation of paragraph II. *See Florida Star*, 491 U.S. at 526 (newspaper had been found civilly liable); *Smith*, 443 U.S. at 100 (grand jury had returned indictment against respondent newspapers); *Landmark Communications, Inc.*, 435 U.S. at 832 (newspaper had been found guilty of crime); *Cox Broadcasting Corp.*, 420 U.S. at 474 (television news reporter had been found civilly liable). Therefore, the constitutionality of a punishment for the publication of lawfully obtained, truthful information is not before this court.

The Federal Constitution offers the petitioners no greater protection than does the State Constitution under these circumstances. Accordingly, we reach the same result under the Federal Constitution as we do under the State Constitution.

*VI. Severability*

Having concluded that RSA 458:15-b, III violates the constitutional right of access to court records, we are left with RSA 458:15-b, I and II, and the petitioners' argument that the statute violates the separation of powers guaranteed by the State Constitution. However, before reaching the separation of powers argument, we must first determine whether RSA 458:15-b, III is severable from RSA 458:15-b, I and II, because if paragraph III is not severable, paragraphs I and II will not survive alone.

■ "In determining whether the valid provisions of a statute are severable from the invalid ones, we are to presume that the legislature intended that the invalid part shall not produce entire invalidity if the valid part may be reasonably saved." *Claremont School Dist. v. Governor (Statewide Property Tax Phase-In)*, 144 N.H. 210, 217 (1999) (quotation omitted). "We must also determine, however, whether the unconstitutional provisions of the statute are so integral and essential in the general structure of the act that they may not be rejected without the result of an entire collapse and destruction of the structure." *Id.* (quotation omitted).

In reporting that House Bill 384 ought to pass with amendment, the House Commerce Committee report provided a written statement of intent:

> Financial affidavits used during divorce, separation, [and] annulments are statements of a personal nature and should not be made public since it accomplishes no public purpose. Most

states do not include financial affidavits in the court file, but are kept by the clerk of courts and available to all.

N.H.H.R. Jour. 439 (2003). House Bill 384, as amended, included an analysis, which stated that "[the bill] provides that financial affidavits in domestic relations cases are confidential and accessible only to the parties, their attorneys, the guardian ad litem, and state and federal officials."

From this legislative history, we conclude that paragraph III is not "so integral and essential in the general structure of the act that [it] may not be rejected without the result of an entire collapse and destruction of the structure." *Claremont School Dist.*, 144 N.H. at 217 (quotation omitted). RSA 458:15-b was enacted in order to make confidential all financial affidavits, and paragraphs I and II continue to accomplish that primary legislative purpose. Paragraph III appears to have been enacted only as a means for members of the public to gain access in certain circumstances. Paragraph I maintains the confidentiality of financial affidavits, and public access will continue to be permitted in certain circumstances, in a manner consistent with the minimum procedural requirements of Part I, Articles 8 and 22 of the State Constitution. Therefore, we conclude that paragraphs I and II are severable from the unconstitutional provision of RSA 458:15-b.

We note that paragraphs I and II provide as follows:

> I. *Except as provided in paragraph III*, all financial affidavits filed under this chapter shall be confidential and accessible only to the parties, their attorneys, the guardian ad litem, department of health and human services employees responsible for child support administration, and state and federal officials for the purpose of carrying out their official functions.

> II. Any person who knowingly discloses a financial affidavit to any person not authorized to obtain the financial affidavit under this section shall be guilty of a misdemeanor. This paragraph shall not apply to documents released by a court pursuant to *paragraph III*.

RSA 458:15-b, I, II (emphasis added). Having declared paragraph III unconstitutional, it may appear that RSA 458:15-b now contains no possibility for a member of the public to petition for access to a confidential financial affidavit. Such an interpretation would render RSA 458:15-b, I, unconstitutional as an infringement upon the public right of access to court records, as discussed. *See supra* Part IV, B, 2. To resolve this conflict, we invoke the principle that "a statute will not be construed to be

unconstitutional, where it is susceptible to a construction rendering it constitutional." *Coffey v. Bresnahan*, 127 N.H. 687, 691 (1986) (quotation omitted). For the reasons stated above, we believe that the legislature would have chosen to enact a provision comparable to paragraph I that included a constitutional procedure for public access. *Cf. Coffey*, 127 N.H. at 691 (concluding that legislature would have enacted statute, permitting institution of a tort action after the death of a party, with a constitutional six-year limitation period rather than the unconstitutional two-year limitation contained in the statute). We therefore construe paragraphs I and II to provide for public access in a manner consistent with the State Constitution; that is: (1) that the party opposing disclosure of the document demonstrate that there is a sufficiently compelling reason that would justify preventing public access to that document; and (2) that the court determine that no reasonable alternative to nondisclosure exists and use the least restrictive means available to accomplish the purposes sought to be achieved. *Cf. State v. LaPorte*, 134 N.H. 73, 78-79 (1991) (statute prohibiting deposition of children who were under age sixteen at time of offense was unconstitutional, but court construed statute to prohibit deposition of children who are under age sixteen at time of deposition in order to render the statute constitutional in light of its purpose to protect children from repetitive interrogation without judicial supervision).

## VII. Separation of Powers

Having concluded that RSA 458:15-b, I, as construed, does not violate the constitutional right of access to court documents, and that RSA 458:15-b, I and II are severable from RSA 458:15-b, III, we now consider whether the remaining provisions of RSA 458:15-b violate the separation of powers guaranteed by Part I, Article 37 of the State Constitution.

The petitioners contend that RSA 458:15-b violates Part I, Article 37 by controlling access to court records, and thus intruding upon the court's power "to control its own proceedings." We disagree.

An essential power of the judiciary is the power to control its own proceedings. *See State v. LaFrance*, 124 N.H. 171, 179-80 (1983). The doctrine of separation of powers is violated when one branch of government usurps an essential power of another. *See Opinion of the Justices*, 121 N.H. 552, 556 (1981). Under RSA 458:15-b, as construed, the court retains ultimate authority over access to court records. Therefore, the power to control judicial proceedings continues to rest with the judiciary.

The petitioners also argue that RSA 458:15-b conflicts with the court's rule-making authority under Part II, Article 73-a of the State Constitution, and thus violates the separation of powers doctrine. They contend that

RSA 458:15-b conflicts with the court's "power to control records filed by parties in pending actions," and specifically conflicts with Superior Court Rule 197. As stated, under RSA 458:15-b, as construed, the court retains ultimate authority over access to court records, and thus the statute does not conflict with the court's power to control these records. Furthermore, we do not agree that RSA 458:15-b, as construed, conflicts with Superior Court Rule 197.

Superior Court Rule 197 provides, in pertinent part: "The clerk shall, upon written request of any party, place that party's affidavit in a sealed envelope, which shall not be opened except by the parties, the Office of Child Support, or with leave of court." Rule 197 and RSA 458:15-b, I, differ in two respects: (1) the latter makes all affidavits confidential upon filing, while the former requires the sealing of affidavits only upon request of a party; and (2) the latter permits more individuals access to affidavits without leave of court than does the former. We find that neither of these differences results in a conflict between the statute and the court rule.

RSA 458:15-b, I, and Rule 197 can coexist. Neither prevents a party from invoking the provisions of the other. RSA 458:15-b, I, as construed, makes all financial affidavits confidential automatically, but access is granted, without leave of court, to "the parties, their attorneys, the guardian ad litem, department of health and human services employees responsible for child support administration, and [certain other] state and federal officials." *Id.* Despite this provision, a party may still invoke the procedures of Rule 197 by requesting that the clerk place the affidavit under seal, in which case access will be granted, without leave of court, to only the parties and the Office of Child Support. SUPER. CT. R. 197. In the absence of a written request under Rule 197, RSA 458:15-b, I, applies.

The coexistence of the statute and the rule does not create a conflict. If a financial affidavit is sealed pursuant to Rule 197, RSA 458:15-b, I, is not violated. Nothing in RSA 458:15-b, I, *requires* that access always be granted, without leave of court, to the guardian ad litem or any state or federal officials outside of the Office of Child Support; the provision of access to them is merely an exception to the general rule of confidentiality established by RSA 458:15-b, I. Thus, the statute does not supplant the rule, and the two continue to exist without contradiction. *Cf. State v. Farrow*, 140 N.H. 473, 475 (1995) (statutes which deal with a similar subject matter are to be construed so as not to contradict each other).

The petitioners' arguments that RSA 458:15-b is a violation of the separation of powers doctrine because it intrudes upon the court's power to control its proceedings and records and because it conflicts with Superior Court Rule 197 are unpersuasive. Therefore, we hold that RSA

458:15-b, I, as construed, does not violate the separation of powers guaranteed by Part I, Article 37 of the State Constitution.

*VIII. Conclusion*

For the foregoing reasons, we hold that paragraphs I and II of RSA 458:15-b, as construed, do not violate the right of access to court records provided by Part I, Articles 8 and 22 of the State Constitution. Nor do paragraphs I and II violate the separation of powers guaranteed by Part I, Article 37 of the State Constitution. However, RSA 458:15-b, III is an unconstitutional restriction on the public right of access to court records provided by Part I, Articles 8 and 22 of the State Constitution. Because RSA 458:15-b, III is severable from the other constitutional provisions of RSA 458:15-b, the constitutional provisions remain valid, as construed in this opinion.

*Affirmed in part; reversed in part; and remanded.*

BRODERICK, C.J., and NADEAU, DALIANIS and GALWAY, JJ., concurred.