Merrimack
No. 2007-178

THE STATE OF NEW HAMPSHIRE

v.

WILLIAM DECATO

Argued: October 18, 2007
Opinion Issued: December 18, 2007

*Kelly A. Ayotte*, attorney general (*Michael K. Brown*, senior assistant attorney general, on the brief and orally), for the State.

*Theodore Lothstein*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

*Orr & Reno, P.A.*, of Concord (*William L. Chapman* on the brief and orally), for petitioner Newspapers of New Hampshire, Inc.

*Malloy & Sullivan*, of Manchester (*Kathleen C. Sullivan* on the brief and orally), for petitioner Union Leader Corporation.

*Gregg P. Leslie & a.*, of Arlington, Virginia, by brief, and *Orr & Reno, P.A.*, of Concord (*William L. Chapman* on the brief), for The Reporters Committee for Freedom of the Press, as *amicus curiae*.

DALIANIS, J. The petitioners, Newspapers of New Hampshire, Inc. and Union Leader Corporation, appeal an order of the Superior Court (*Mangones*, J.) partially denying their request for access to proceedings and records of probable cause hearings initiated by the State against the defendant, William DeCato, pursuant to the Involuntary Civil Commitment of Sexually Violent Predators Act (SVPA), RSA ch. 135-E (Supp. 2007) (amended 2007). We vacate and remand.

## I. The SVPA

Having found a high likelihood that "sexually violent predators [will] engag[e] in repeat acts of predatory sexual violence," and that the "existing involuntary commitment procedures for the treatment and care of mentally ill persons are inadequate to address the risk [they] pose," the legislature enacted the SVPA to establish a "civil commitment procedure

for the long-term care and treatment of sexually violent predators." RSA 135-E:1. A "sexually violent predator" is any person who: (1) has been convicted of a "sexually violent offense"; (2) suffers from a "mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment"; and (3) is not eligible for involuntary admission under RSA chapter 135-C (2005 & Supp. 2007) or RSA 171-B (2002). RSA 135-E:2, XII; see RSA 135-E:2, III, VI-VII, XI.

Under the SVPA, in the event that a person who has been convicted of a sexually violent offense is eligible for immediate release from total confinement, the State may file a petition for an emergency hearing to determine whether probable cause exists that the person is a sexually violent predator. RSA 135-E:4, I; see RSA 135-E:2, XIII (defining "total confinement"). If the court finds probable cause, then the person is held in a secure facility and a multidisciplinary team of mental health professionals assesses whether the person is a sexually violent predator. RSA 135-E:4, II. If the team determines that the person is a sexually violent predator then the State may file a petition with the superior court to commit the person as a sexually violent predator. RSA 135-E:4, III. The court then conducts a trial to determine whether the person is a sexually violent predator. RSA 135-E:9. A person civilly committed under the SVPA will be held in a secure facility until "the person's mental abnormality or personality disorder has so changed that the person no longer poses a potentially serious likelihood of danger to others." RSA 135-E:11, II; see RSA 135-E:12. The commitment order shall remain valid for up to five years. See RSA 135-E:11, II.

## II. Procedural Background

The record supports the following: The defendant was convicted of one count of aggravated felonious sexual assault, which is a "sexually violent offense" under RSA 135-E:2, XI(c). On the last day of his sentence, the State petitioned for an emergency hearing pursuant to the SVPA to have him civilly committed as a sexually violent predator. The trial court conducted a probable cause hearing that was initially open to the public. At the parties' request, the trial court closed the evidentiary portion of the hearing. The court ruled that there was probable cause to convene a multidisciplinary team, pursuant to RSA 135-E:4. Subsequently, the petitioners filed petitions for access to the probable cause proceedings and records, claiming a right to public access under the State Constitution.

The trial court granted the petitioners' request for relief in part and denied it in part, ruling:

[T]he Court will conduct proceedings in this matter with both open and closed portions. Testimony and information which has been traditionally provided in open proceedings, such as testimony from investigating officers and victims, shall be open. However, portions of the proceedings in which testimony from treating physicians and/or counselors shall be elicited shall remain closed, and documents related to such testimony shall remain under seal. Similarly, opening and closing statements from the parties shall remain closed to the extent that they are anticipated to reference testimony or documents that must remain confidential.

To the extent that the probable cause hearing conducted on January 16-17, 2007 contains testimony that is subject to the public right of access, the Court will provide the [petitioners] with CD recordings of portions of the testimony that meet the above-noted standards.

The multidisciplinary team found that the defendant was a sexually violent predator. The trial court provided a redacted version of the team's report to the petitioners. The trial court then conducted a second probable cause hearing and filed its determination under seal. The petitioners appealed, seeking access to the sealed records and proceedings. The State then withdrew the petition against the defendant and he was released from confinement.

### III. Analysis

On appeal, the petitioners argue that the trial court unreasonably restricted their constitutional rights to access to SVPA proceedings and records. Because the petitioners have failed to demonstrate that they have preserved their federal constitutional argument on appeal, we only consider public access under the State Constitution. *See Bean v. Red Oak Prop. Mgmt.*, 151 N.H. 248, 250 (2004). We review questions of constitutional law *de novo. State v. Lavoie*, 155 N.H. 477, 481 (2007).

### A. Public Right of Access Under State Constitution

New Hampshire has a strong tradition of recognizing the right of public access to governmental proceedings and records. "The public right of access to court proceedings and records pre-dates the State and Federal Constitutions and is firmly grounded in the common law." *Associated Press v. State of N.H.*, 153 N.H. 120, 125 (2005). "Unlike some governmental proceedings and records, most court records and proceedings have historically been open to the public." *Id.* at 125 (citation

omitted). Moreover, our State "is one of only a handful of States with a constitutional provision that explicitly protects the public's right of access to governmental proceedings and documents." *Id.* at 128. The State constitutional right to public access is derived from Part I, Articles 7, 8, and 22 of the State Constitution. *See id.* at 124-25, 128.

Part I, Article 8 reads:

> All power residing originally in, and being derived from, the people, all the magistrates and officers of government are their substitutes and agents, and at all times accountable to them. Government, therefore, should be open, accessible, accountable, and responsive. To that end, the public's right of access to governmental proceedings and records shall not be unreasonably restricted.

N.H. CONST. pt. I, art. 8. The last two sentences of this article were added in 1976 "to further [the] tradition of open court proceedings and records, consistent with the purpose of assuring ... the accountability of the judiciary." *Associated Press*, 153 N.H. at 125. "[T]he reasonableness of a restriction on access to court proceedings and records must be examined in light of this purpose and the common law and constitutional origins of the right." *Id.*

We read Part I, Article 8 in conjunction with Part I, Article 7, which provides, in pertinent part: "The people of this state have the sole and exclusive right of governing themselves as a free, sovereign, and independent state." N.H. CONST. pt. I, art. 7; *see Associated Press*, 153 N.H. at 128. Read together, these provisions express the American theory of government that the government is ultimately accountable to the people. *Opinion of the Justices*, 111 N.H. 175, 177 (1971).

Further, where federal courts have found that the right of public access is rooted in the First Amendment of the Federal Constitution, we have found that the right of public access to court records and proceedings is grounded in Part I, Article 22 of the State Constitution. *Associated Press*, 153 N.H. at 128. Part I, Article 22 provides: "Free speech and liberty of the press are essential to the security of freedom in a state: They ought, therefore, to be inviolably preserved." N.H. CONST. pt. I, art. 22.

■ Thus, "[t]he right to open courtrooms and access to court records related to court proceedings is firmly supported by New Hampshire practice and common law principles, Part I, Articles 8 and 22 of our State Constitution and our guidelines for public access." *Associated Press*, 153 N.H. at 129 (quotation omitted). "Such access is critical to ensure that

court proceedings are conducted fairly and impartially and that the judicial process is open and accountable." *Id.* (quotation and citations omitted).

### B. Public Access under the SVPA

We first address whether the state constitutional right of public access attaches generally to proceedings under the SVPA. Although the defendant urges us to consider only whether such a right attaches at the probable cause stage, in the interest of judicial economy, we consider whether it attaches at all stages of proceedings under the SVPA. *See Appeal of Seacoast Anti-Pollution League*, 125 N.H. 708, 719 (1985).

█ In determining whether the right to public access under our constitution applies to particular proceedings, we have adopted the "experience and logic test" of the United States Supreme Court. *Associated Press*, 153 N.H. at 133. Under this test, a court must determine: (1) "whether the place and process have historically been open to the press and general public," and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8 (1986) (*Press Enterprise II*); *see Associated Press*, 153 N.H. at 131. If the proceeding at issue meets both prongs of the test, then the right of public access attaches. *See Associated Press*, 153 N.H. at 131.

█ The petitioners contend that the trial court misapplied the experience and logic test. In applying it, the trial court analogized proceedings under the SVPA to involuntary commitment proceedings under RSA chapter 135-C. As proceedings under RSA chapter 135-C are presumptively closed, *see* RSA 135-C:43 (2005), the court concluded that the experience prong of the experience and logic test was not met and that proceedings under the SVPA "are not constitutionally required to be open." This was error.

Proceedings under RSA chapter 135-C are too dissimilar to those under the SVPA to serve as historical precedent. For instance, involuntary commitment hearings are conducted without a jury, *see* RSA 135-C:43-:45 (2005), while a jury trial may be had under the SVPA, *see* RSA 135-E:9. Further, involuntary commitment proceedings occur in a district or probate court, *see* RSA 135-C:20 (2000), while proceedings under the SVPA occur in the superior court, *see* RSA 135-E:2, IV. Additionally, "[a]ny responsible person may petition" for an involuntary civil commitment hearing, RSA 135-C:35 (2005), while hearings under the SVPA may only be initiated by the State, *see* RSA 135-E:6. Most importantly, RSA chapter 135-C applies to the mentally ill and disabled, while the SVPA applies to those without a "mental disease or defect that

renders them appropriate for involuntary treatment under RSA 135-C." RSA 135-E:1.

More apt historical precedent is found in New Hampshire's prior laws for commitment of sexual predators. The first law for the involuntary civil commitment of sexual predators, entitled "An Act Relating to the Care, Treatment, and Rehabilitation of Sexual Psychopaths," was enacted in 1949. Laws 1949, ch. 314. The law provided for "indeterminate segregation and treatment of [sexual psychopaths]" in order to "protect society more adequately from aggressive sexual offenders." RSA 173:1 (1955). When a person was arrested and charged with one of several sexual crimes, the county attorney was required to file a petition in the superior court to have the defendant committed under this law. RSA 173:3 (1955). Similar to the process under the SVPA, a board consisting of two psychiatrists and a physician would evaluate the defendant, both personally and through documentary evidence, and would issue a written report determining whether he was a sexual psychopath. RSA 173:4 (1955). If a majority of the board concluded that the defendant was a sexual psychopath, the court would conduct a hearing to determine whether to commit the defendant and could, "in its discretion, exclude the general public from attendance at such hearing." RSA 173:5 (1955).

In 1969, this law was repealed and replaced by the "Dangerous Sexual Offenders Act." Laws 1969, 443:1. Similar to the SVPA and the 1949 law, this law endeavored "to protect society more adequately from dangerous sexual offenders[, because] the laws of this state [did] not provide for the proper disposition of those who commit or have a tendency to commit such crimes and whose actions result from an abnormal psycho-sexual condition." RSA 173-A:1 (1977). Unlike the 1949 law, which applied to arrestees, but similar to the SVPA, the 1969 law applied to persons who had been convicted of certain sex offenses. RSA 173-A:3 (1977). Once personnel from the New Hampshire Hospital examined the defendant and issued a report concluding that the person was a dangerous sexual offender, the court would conduct a hearing to determine whether to commit him under the act. RSA 173-A:3. As under the 1949 law, the court could "in its discretion, exclude the general public from attendance at such a hearing." RSA 173-A:4 (1977). This law was repealed in 1983. Laws 1983, 206:1.

█ Based upon our review of the prior sexual predator laws, which bear marked similarity to the SVPA, we conclude that commitment proceedings for sexual predators have been presumptively open to the public, and, thus, the experience prong of the experience and logic test has been met. We now turn to the logic prong of the test and consider "whether public

access plays a significant positive role in the functioning of" commitment proceedings for sexual predators. *Press-Enterprise II*, 478 U.S. at 8.

"Although many governmental processes operate best under public scrutiny, it takes little imagination to recognize that there are some kinds of government operations that would totally be frustrated if conducted openly." *Id.* at 8-9. In the context of criminal trials, however, the United States Supreme Court has stated that public scrutiny "enhances the quality and safeguards the integrity of the fact finding process, with benefits to both the defendant and society as a whole" and "fosters an appearance of fairness, thereby heightening public respect for the judicial process." *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606 (1982). Moreover, "public access to criminal trials permits the public to participate in and serve as a check upon the judicial process—an essential component in our structure of self-government." *Id.* In *Associated Press*, we applied these same considerations to domestic relations proceedings. While we left open the possibility that "under the experience and logic test, there may well be certain types of civil proceedings to which the constitutional right of access will not attach," we held that domestic relations proceedings were not one of them. *Associated Press*, 153 N.H. 133. Rather, "[t]he importance of matters regarding children and families only heightens the need for openness and public accountability in domestic relations proceedings." *Id.*

We conclude that public access will play an important positive role in upholding proceedings under the SVPA. The legislature has found that sexually violent predators pose a significant public safety risk and that they often commit further acts of sexual violence after being released from confinement. Thus, it is particularly important that the citizens of New Hampshire be able to hold their government accountable for the integrity of proceedings under the SVPA. To enhance the quality and safeguard the integrity of SVPA proceedings, public access must include more than simply the information whether certain persons are committed; it should include the factual basis that led the court to commit or release them. Therefore, we hold that the logic prong of the experience and logic test is met. As both prongs of the experience and logic test are met, we conclude that the State constitutional right of public access attaches to SVPA proceedings in general.

Because we cannot determine to what extent the trial court's erroneous application of the experience and logic test informed its later decisions to close certain proceedings and seal certain documents, we vacate those decisions. In light of our decision that the logic and experience test controls the analysis, we need not address the defendant's assertion that

his privacy interests require closing certain proceedings or sealing certain records; we remand to the trial court for further consideration of those issues.

*Vacated and remanded.*

BRODERICK, C.J., and DUGGAN and HICKS, JJ., concurred.